No. 48,195

State of Kansas, *Appellee,* v. Lester P. Huff, III, *Appellant.*

(551 P. 2d 880)

Opinion filed June 12, 1976.

*Michael Crow,* of Leavenworth, argued the cause and was on the brief for the appellant.

*Patrick J. Reardon,* County Attorney, argued the cause, and *Curt T. Schneider,* Attorney General, was with him on the brief for the appellee.

The opinion of the court was delivered by

KAUL, J.: The defendant-appellant appeals from a conviction by a jury of aggravated robbery as defined in K. S. A. 21-3427. Defendant's contentions on appeal primarily concern issues pertaining to search and seizure.

The evidence discloses that during the evening hours of December 11, 1974, a Shop-Rite store in Leavenworth was robbed. The police were notified and Officer Vernell S. Baker arrived at the store a few minutes after the robbery. Officer Baker was informed by store employees that the robbery was committed by four men and that at least two of them were wearing ski masks with holes over the eyes cut out. The masks were also referred to as stocking caps. One mask was described as being a dark color and the other as red. The robbers were also described as wearing leather coats. Baker was joined by Detective Bogner and they proceeded to circle the immediate area in patrol cars. While Baker was patrolling the area an individual came running toward him, waving his hands, and informed Baker that he had just seen four "guys" run up the steps of a nearby apartment house. On questioning, the individual informed Officer Baker that two of the men were wearing leather coats. One was wearing a green army coat and the other a brown coat. The individual also informed Baker that one of the men wore a red stocking cap and that he also saw two other stocking caps. Baker radioed for further assistance and then proceeded to enter the apartment house. He testified that this was about forty or forty-five minutes after he had first gone to the Shop-Rite store.

After entering the apartment house Officer Baker was joined by Officer Gary Hall who had responded to Baker's radio call for assistance. The officers heard voices emanating from one of the apartments and Baker knocked on the door. The door was partially opened by a person later identified as Phyllis White. Baker testified that as the door was opened he was able to observe a red ski mask with holes cut into it lying on the apartment floor. He further testified that:

"I stepped to the doorway of the apartment. I didn't go into the apartment. I was right in the doorway, the archway."

Upon seeing the red ski mask or stocking cap, Baker entered the apartment with his pistol drawn, followed by Officer Gary Hall. He saw two males and two females and a small child in the front room of the apartment. The two males were later identified as defendant

and one Wadell Mathis. They were ordered to lie down on a bed and couch while the officers proceeded to search the immediate area. The two women, who were identified as Sylvia Martin and Phyllis White, apparently had no connection with the robbery or with any of the robbers.

Officer Gene Tomrell arrived shortly after Baker and Hall had entered the apartment. Several officers testified that they were concerned about the whereabouts of the other two robbers. Tomrell went into the adjoining bedroom where he saw some coats and a pistol on the floor. He also found on the kitchen floor a white cloth bag, similar to the bag described by the robbery victims, used in the collection of the money from the cash drawer in the robbery. Tomrell also discovered paper money, rolls of pennies, and food stamps in a partially open drawer. Tomrell returned to the front of the apartment and proceeded to search a dresser in which he found a pistol with a five or six-inch barrel, similiar to the weapon described by the robbery witnesses. Tomrell testified that he considered the pistol as being easily accessible to defendant. All of the articles which were connected with the robbery were seized by the officers.

Defendant and Mathis were arrested, taken to the police station and charged with robbery. Following his preliminary hearing defendant filed a motion in district court to suppress the fruits of the apartment search based on asserted violations of the Fourth and Fifth Amendments to the Constitution of the United States. After an evidentiary hearing the motion was overruled by the trial court. The case proceeded to trial before a jury and the evidence in question was admitted over defendant's objection.

Defendant's first argument on appeal relates to the information supplied by the individual to Officer Baker. Defendant contends that the officers had no right to rely upon the information received from an anonymous individual who was unidentified and untested and, therefore, defendant says the evidence was obtained by an illegal search and seizure. In 'this connection, it should first be pointed out that the individual did not relate facts pertaining to the crime. His information only pertained to the whereabouts of four men matching the descriptions of the robbers. Since the individual supplied only information as to the whereabouts of the wanted persons it was unnecessary to establish his reliability in order to give his information credence. The information gleaned from the individual, coupled with Baker's knowledge of the facts of

the robbery, clearly gave him probable cause to believe the four persons who had entered the apartment building had committed the felonious robbery. (K. S. A. 22-2401.) There is nothing in the record suggesting that it was unreasonable for Officer Baker to believe the individual other than the mere fact he was unknown. An arrest is not unlawful merely because an unknown person told the police where a wanted person could be found. (*Malone v. Crouse,* [10th Cir. 1967], 380 F. 2d 741. See, also, *State v. Clark,* 218 Kan. 726, 544 P. 2d 1372.) Under the circumstances shown to exist the subsequent seizure of the fruits of the robbery was not tainted by reason of the information received.

In his second point on appeal, defendant advances several additional arguments against the validity of the search and maintains it was prejudicial error to admit into evidence the articles seized by the officers. Defendant argues the state cannot rely on the plain view doctrine because Officer Baker was in the doorway of the apartment when he saw the red ski mask; that he had intruded into a privileged area without consent before he saw the mask, and, therefore, his observations were tainted and the subsequent seizure of the items was unconstitutional.

As we have previously indicated, Baker entered the apartment house immediately upon receiving the information from the informant, who had observed the street circumstances indicating criminal involvement. Baker stopped at the apartment door where he heard the voices and knocked. When the door was opened by Phyllis White, Baker observed the ski mask on the floor. According to his testimony he had not entered the apartment, but at most was standing in the doorway. This testimony sufficiently supports the trial court's determination that Baker had not unlawfully intruded into the apartment when he saw the mask. The evidence was sufficient to sustain the state's burden under K. S. A. 22-3216 (2).

Under the provisions of K. S. A. 22-2401 a law enforcement officer may arrest a person without a warrant if the officer has probable cause to believe the person has committed a felony. Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that a felony has been or is being committed by the person to be arrested. (*State v. Walker,* 217 Kan. 186, 535 P. 2d 924; *State v. Lasley,* 209 Kan. 495, 496 P. 2d 1398; and *State v. Hart,* 200 Kan. 153, 434 P. 2d 999.)

We have no hesitancy in concluding on the record here presented that a prudent man possessed of Officer Baker's knowledge, at the

time he saw the ski mask on the floor next to defendant, would have been warranted in believing defendant had committed the robbery.

Relying upon *State v. Schur,* 217 Kan. 741, 538 P. 2d 689, defendant advances the argument that even though the ski mask was in Baker's plain view, he was still not justified in making a warrantless search and seizure in the absence of "exigent circumstances." We have recognized the plain view doctrine is subject to certain limitations. Following the rule announced in *Coolidge v. New Hampshire,* 403 U. S. 443, 29 L. Ed. 2d 564, 91 S. Ct. 2022, we held in *Schur:*

"Absent 'exigent circumstances', plain view alone is never enough to justify the warrantless seizure of evidence." ( Syl. 3.)

However, the situation encountered by Baker, coupled with the facts known by him at the time he observed the ski mask, were ample to constitute exigent circumstances. Baker had good reasons to believe the apartment complex harbored four armed felons. Should Baker have left his partner to surround the entire apartment, while he sought a magistrate? The exigent circumstances encountered by Baker fully justified the warrantless arrest in the inherently dangerous felony case in which he was involved. The circumstances here are clearly distinguishable from those related in *Schur,* wherein observation through a window of what was thought to be a burning marijuana cigarette, in the absence of any other circumstances, was held insufficient to justify a warrantless search. Where exigent circumstances exist the business of policemen is to act, not to speculate or meditate on whether information received by them is correct. ( *State v. Boyle,* 207 Kan. 833, 486 P. 2d 849; and *Miller v. United States,* 357 U. S. 301, 2 L. Ed. 2d 1332, 78 S. Ct. 1190.)

As his next point defendant says that even assuming the arrest was lawful, the area searched exceeded the area in which an incidental search could be made. Since the officers knew that four men were involved in the robbery and had only apprehended two, they had good reason to believe the other two might have hidden themselves in other rooms. We believe the officers acted reasonably in looking into the other rooms to make sure the other robbers were not hiding there and might harm the officers or attempt to rescue the arrested defendants. In this situation it would be unreasonable to require the officers to secure a warrant for the further search.

Generally, the extent of a warrantless search, which may be justi-

fied solely as an incident to an arrest, is limited to the area within the arrestee's immediate control. (*State v. Tygart,* 215 Kan. 409, 524 P. 2d 753; and *Preston v. United States,* 376 U. S. 364, 11 L. Ed. 2d 777, 84 S. Ct. 881.) However, where probable cause is shown to exist and some of the persons sought are not found in the first room lawfully entered officers may for self-protection and to avoid concealment or destruction of evidence, go through other rooms and seize fruits of the crime in plain view. (*State v. Phippen,* 208 Kan. 962, 494 P. 2d 1137; and *United States v. Patterson,* [10th Cir. 1971], 447 F. 2d 424.) While under the facts appearing here, a reasonable search may extend beyond the area within defendant's immediate control, we do not rest our decision solely on this ground. As the state points out, defendant did not have standing to challenge the search in the instant case. The evidence was that defendant entered the apartment upon finding the door unlocked. He has claimed no interest in the premises either proprietary or possessory. Either Mrs. White or Mrs. Martin, or both (the record is not clear) was the legal tenant of the apartment. In this connection we held in *State v. Masqua,* 210 Kan. 419, 502 P. 2d 728:

"A defendant who has no interest in premises, either of a proprietary or possessory character, has no standing to invoke the constitutional guaranty of immunity from unreasonable search and seizure." (Syl. 1.)

See, also, *State v. Sumner,* 210 Kan. 802, 504 P. 2d 239; *State v. Grimmett & Smith,* 208 Kan. 324, 491 P. 2d 549; and *Wheeler v. State,* 202 Kan. 134, 446 P. 2d 777.

Finally, defendant contends the trial court should have submitted his requested instructions on the lesser included offenses of robbery and theft. While K. S. A. 21-3107 (3) requires that instructions on lesser included offenses be given this duty arises only where there is evidence under which the defendant might have been reasonably convicted of the lesser offense. (*State v. Cameron & Bentley,* 216 Kan. 644, 533 P. 2d 1255; *State v. Hollaway,* 214 Kan. 636, 522 P. 2d 364; and *State v. Reed,* 214 Kan. 562, 520 P. 2d 1314.) The undisputed evidence in this case is that the robbers were armed and took in excess of $50.00 at gunpoint. The jury would not have been warranted in finding defendant guilty of any offense other than aggravated robbery.

The judgment is affirmed.