468 A.2d 333

James L. STACKHOUSE, Jr.

v.

STATE of Maryland.

No. 4, Sept. Term, 1983.

Court of Appeals of Maryland.

Dec. 23, 1983.

Gary W. Christopher, Asst. Public Defender, Baltimore (Alan H. Murrell, Public Defender, Baltimore, on brief), for appellant.

Jillyn K. Schulze, Asst. Atty. Gen., Baltimore (Stephen H. Sachs, Atty. Gen., Baltimore, on brief), for appellee.

Argued before MURPHY, C.J., and SMITH, ELDRIDGE, COLE, DAVIDSON, RODOWSKY and COUCH, JJ.

COUCH, Judge.

The issue in this case is whether evidence seized contemporaneously with arrest in a warrantless search of an area beyond appellant's immediate control is admissible on the ground that another person might have concealed or destroyed the evidence. In a trial before the court, the evidence was admitted and appellant was found guilty of robbery with a deadly weapon and burglary. The Court of Special Appeals found no error in admitting the evidence and affirmed in an unreported *per curiam* opinion. We granted certiorari to consider this important issue. We find that in introducing the evidence in question the State did not meet its burden. Accordingly, we reverse.

I

On July 14, 1981, Countryman Arthur Wong was on a business trip and was staying at the Holiday Inn, Number 2, in Glen Burnie, Maryland. At 4:30 in the morning, the crash of the motel room window breaking awakened Mr. Wong. The lamp was on, and Mr. Wong observed a man wearing a floppy hat, gloves, and sneakers, and holding what appeared to be a gun barrel, ten to twenty-four inches long, come through the window. The man demanded money, which Mr. Wong gave him, and he also took Mr. Wong's wallet before leaving.

The police arrived and showed Mr. Wong an array of ten photographs from which he selected the photograph of James Stackhouse, the appellant. The investigating officers knew that James Stackhouse's address was 3 Warfield Road. Mr. Wong's identification was corroborated by a police tracking dog who had traced the scent of the robber from the motel to appellant's address. The officers went to that address, but when appellant answered the door, he identified himself as James Lewis and told the officers that James Stackhouse had left five minutes earlier. Appellant would not show any identification, but a woman who was present, later identified as appellant's foster sister, confirmed for the police that he was James Lewis.

The officers told appellant that he matched the description of the robber, took him into custody, placed him in the police car, and drove him back to the Holiday Inn. Mr. Wong told the police that appellant looked like the robber, but Mr. Wong was reluctant to identify him definitely as the robber. The police released appellant, who told them that he was going home.

Officer Thomas then checked with the Central Records Division whose records confirmed that James Lewis and James Stackhouse were the same person. Officer Thomas called appellant's home and verified that appellant was still there. Officer Thomas then learned that two active arrest warrants, charging James Stackhouse with unrelated armed

robberies at the Holiday Inn, existed. Officer Thomas requested several police cars be sent to surround the house immediately, and he arranged for two detectives to meet him and several police units at the house.

When the police arrived, appellant's foster sister came out of the house, told the police that she was alone, and then reentered the house. Officer Thomas and four other officers entered the house, armed with the arrest warrants, and found the sister on the couch with her baby. The officers directed her into the kitchen and then took her and the baby out of the house.

The officers started searching for appellant, beginning in the basement and coming lastly to the attic. Access to the attic was gained through a panel in the ceiling of the second floor hallway. Officer Thomas climbed into the hatchway of the dark attic and shined his flashlight toward the south side of the house where he saw a black male lying in the insulation between the rafters. Officer Thomas called out to appellant that he could see him, and told him to put his hands up and crawl toward the hatchway. Appellant complied and he was taken out of the attic to the second floor hallway and handcuffed. Officer Thomas then went into the attic to where appellant had been and, two feet away, recovered a shotgun barrel, approximately eighteen inches long. Appellant testified that the gun barrel had been buried in the insulation near where he had been hiding.

The admissibility of the gun barrel into evidence is the issue presented in this appeal.

## II

### A.

■ In *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the Supreme Court established the permissible scope of a warrantless search or seizure incident to a lawful arrest. Incident to such an arrest, the arresting officer may search the person arrested for weapons, to protect the safety of the officer and others, and for evi-

dence, to prevent its concealment or destruction. Id. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The officer may also search the area within the arrestee's reach from where he might grab a weapon or evidence. *Id. See also Bouldin v. State,* 276 Md. 511, 518, 350 A.2d 130, 134 (1976). The Court noted that a table or drawer in front of the arrestee was an example of the permissible scope of the rule because of the possibility that an arrestee could grab for a hidden gun. *Id.* In *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), this Court approved of a search of a partially opened drawer behind the arrestee as within *Chimel* and noted that handcuffing the arrestee did not eliminate the possibility that she could gain access to the partially open top drawer of the nightstand. Id. at 220, 464 A.2d at 1001. The drawer was a natural place to conceal a weapon and the arrestee might be able to break free from the officer's restraint. *Id.*

*Chimel* established the rule that incident to arrest, a search may not go beyond the area of the arrestee's person and the area within his immediate control without the authority of a search warrant, except in the situation of well recognized exceptions. 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. The Court, in dicta, thus approved of a second prong of justification for a warrantless search incident to arrest by giving continuing recognition to the exceptions for emergencies and exigencies that in previous cases justified an exemption from the constitutional mandate of a search warrant. *Id.; see McDonald v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). Before discussing this second justification, we turn briefly to *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), which the State contends expanded *Chimel* to include the area of a person's control just before his arrest.

In *New York v. Belton,* the Supreme Court upheld the warrantless search of the zippered pockets of a jacket found inside the passenger compartment of an automobile after the occupants had been ordered out of the car and placed under arrest. *Id.* at 456, 462, 101 S.Ct. at 2862, 2865, 69 L.Ed.2d at 772, 776. The Court decided the case based on

*Chimel* and did not consider the so-called "automobile exception," *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925), in the disposition of the case. 453 U.S. at 462 n. 6, 101 S.Ct. at 2865 n. 6, 69 L.Ed.2d at 776 n. 6. The Court was persuaded by Professor LaFave's argument that law enforcement required workable rules and case-by-case adjudication produced highly sophisticated rules that were impossible for the officer in the field to apply. 453 U.S. at 458, 101 S.Ct. at 2863, 69 L.Ed.2d at 773–74 (quoting LaFave, *"Case-By-Case Adjudication" Versus "Standardized Procedures": The Robinson Dilemma,* 1974 Sup.Ct.Rev. 127, 142). To accomplish a workable rule, the Court generalized from *Chimel* that "articles inside the relatively narrow compass of the passenger compartment of an automobile are in fact generally, even if not inevitably, within 'the area into which an arrestee might reach in order to grab a weapon or evidentiary ite[m].' " *Id.* at 460, 101 S.Ct. at 2864, 69 L.Ed.2d at 774–75 (quoting *Chimel,* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694); *see Gee v. State,* 291 Md. 663, 666–68, 435 A.2d 1387, 1389 (1981). By establishing a hard line definition of the arrestee's reach, the Court provided the bright line test needed for effective law enforcement. *See Gee v. State,* 291 Md. at 668–69 n. 2, 435 A.2d at 1389 n. 2 (quoting *Robbins v. California,* 453 U.S. 420, 431, 101 S.Ct. 2841, 2848–49, 69 L.Ed.2d 744, 753–54 (1981) (Powell, J., concurring)).

The Court noted, however, that this hard line rule was to determine the meaning of *Chimel* only in the particular, and problematic context of automobile searches. 453 U.S. at 460 n. 3, 101 S.Ct. at 2864 n. 3, 69 L.Ed.2d at 775 n. 3. The rule in *Belton* "in no way alters the fundamental principles established in the *Chimel* case regarding the basic scope of searches incident to lawful custodial arrests." *Id.* Thus, although the *Belton* rule does not rely on the rationale of the automobile exception, it nevertheless is limited to the context of automobiles. The establishment of workable, bright line rules should not be distorted by blurring the lines

of those rules. Stretching clear cut rules by analogizing will result in the same confusion that presented the need for such rules in the first place.

■ Furthermore, we will not apply the generalization concerning the arrestee's reach, that was necessary in *Belton* because of the recurring problem of automobile searches, to the dwelling house, which always has been accorded the highest degree of fourth amendment protection. *Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *Payton v. New York,* 445 U.S. 573, 585–91, 100 S.Ct. 1371, 1380–82, 63 L.Ed.2d 639, 650–53 (1980); *Duncan v. State,* 281 Md. 247, 254, 378 A.2d 1108, 1111–12 (1977). The Supreme Court applied the *Chimel* rationale in *Belton,* and that original rationale is soundly continued in the context of the dwelling house. Moreover, we believe *Chimel* provides a workable rule for this situation. *See New York v. Belton,* 453 U.S. at 471, 101 S.Ct. at 2869, 69 L.Ed.2d at 782 (1981) (Brennan, J., dissenting). In *Chimel,* the Supreme Court overturned the rule "that a warrantless search 'incident to a lawful arrest' may generally extend to the area that is considered to be in the 'possession' or under the 'control' of the person arrested." 395 U.S. at 760, 768, 89 S.Ct. at 2038, 2043, 23 L.Ed.2d at 692, 697 (overruling *United States v. Rabinowitz,* 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653 (1950)). We, therefore, reject the State's argument for an expansive reading of *New York v. Belton.*

### B.

■ In holding that the police may search the area within the arrestee's reach incident to a lawful arrest, the Supreme Court in *Chimel* acknowledged in dicta that exigent circumstances provided a second recognized justification for a warrantless search or seizure incident to arrest. 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. In fact, the rule developed in *Chimel* was based on an exigency rationale, that is, the safety of the officer and the preservation of evidence. Recognition that exigent circumstances might

justify a warrantless search or seizure dates well back. *See McDonald v. United States,* 335 U.S. 451, 454–456, 69 S.Ct. 191, 192–93, 93 L.Ed. 153, 158 (1948); *Trupiano v. United States,* 334 U.S. 699, 68 S.Ct. 1229, 92 L.Ed. 1663 (1948), *overruled in part, United States v. Rabinowitz,* 339 U.S. 56, 66, 70 S.Ct. 430, 435, 94 L.Ed. 653 (1950), *reaff'd, Chimel v. California,* 395 U.S. 752, 768, 89 S.Ct. 2034, 2043, 23 L.Ed.2d 685, 697 (1969) (overruling *Rabinowitz* ); *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); *Agnello v. United States,* 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925). The justification, however, remains a narrow one.

The meaning of exigency implies urgency, immediacy, and compelling need. Just as the exigencies relied upon in developing the rule in *Chimel* were of immediate concern to the officer, the other cases upholding warrantless searches or entries based on exigent circumstances rely on conditions equally urgent. For example, in *Davis v. State,* 236 Md. 389, 204 A.2d 76 (1964), *cert. denied,* 380 U.S. 966, 85 S.Ct. 1113, 14 L.Ed.2d 156 (1965), a warrantless entry was justified by the demand to preserve human life where the police discovered carnage in the backyard and could see an apparently lifeless body through the window. *Id.* at 395–96, 204 A.2d at 79. The Court quoted examples of exigent circumstances such as " 'smoke coming out a window or under a door, the sound of gunfire in a house, threats from the inside to shoot through the door at police, [or] reasonable grounds to believe an injured or seriously ill person is being held within.' " *Id.* at 396, 204 A.2d at 81 (quoting *Wayne v. United States,* 318 F.2d 205, 212 (D.C.Cir.), *cert. denied,* 375 U.S. 860, 84 S.Ct. 125, 11 L.Ed.2d 86 (1963)). *See also, e.g., Michigan v. Tyler,* 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486 (1978) (warrantless entry into a burning building to put out a blaze); *United States v. Miller,* 589 F.2d 1117, 1126 (1st Cir.1978), *cert. denied,* 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1979) (warrantless entry and reentry of a boat where drowning suspected and tidal flow created

need for swift action); *Lebedun v. State,* 283 Md. 257, 266–70, 390 A.2d 64, 68–69 (1978) (discussing above cases).

■ Upholding warrantless searches based upon exigent circumstances involves two principal categories of cases: "hot pursuit," and destruction or removal of evidence. In *Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the Supreme Court validated the so-called "hot pursuit" exception. The police arrived at the house that the armed robber had entered only minutes after the robbery. The Court upheld the warrantless search of the house for persons and weapons, stating that "[t]he Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." 387 U.S. at 298–99, 87 S.Ct. at 1645–46, 18 L.Ed.2d at 787.

The Supreme Court also has recognized that the destruction or removal of evidence is an exigency that renders a warrantless search reasonable under the fourth amendment. In *Ker v. California,* 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), the Court upheld a warrantless search incident to arrest where the police had ample evidence supporting a reasonable belief that the suspect was in possession of marijuana, which could be quickly and easily destroyed, and, further, the officers reasonably believed such destruction was imminent. 374 U.S. at 40–41, 83 S.Ct. at 1633–34, 10 L.Ed.2d at 742. Also, in *Schmerber v. California,* 384 U.S. 757, 769–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 918–20 (1966), the warrantless search of giving the arrestee a blood test was upheld because the diminishing of the blood's alcohol content during the time needed to obtain a warrant threatened destruction of the evidence and the officer had probable cause to believe petitioner was intoxicated.

■ Where a warrantless search is based upon the destruction or removal of evidence the surrounding circumstances must present a specific threat to known evidence. For example, in *Thomas v. Parett,* the police knew that narcotics were on the premises and that several people were

present. 524 F.2d 779, 782 (8th Cir.1975). The police could not risk arresting people as they left separately. *See also United States v. Rubin,* 474 F.2d 262, 268 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *State v. Patterson,* 192 Neb. 308, 220 N.W.2d 235 (1974) (many people and heroin easily disposable). To justify the warrantless search the officers must reasonably believe that a strong likelihood exists that the removal or destruction of the evidence is imminent. *United States v. Johnson,* 561 F.2d 832, 850 (D.C.Cir.), *cert. denied,* 432 U.S. 907, 97 S.Ct. 2953, 53 L.Ed.2d 1080 (1977); *see also Henson v. State,* 236 Md. 518, 523, 204 A.2d 516, 519 (1964) (easy destruction of narcotics is exigency justifying unannounced surprise entry to execute search warrant). Several cases suggest that the requirement is that the destruction or removal be in progress. *See Ludlow v. State,* 262 Ind. 266, 314 N.E.2d 750 (1974) (presence of fugitives in house and sound of running steps not sufficient); *Commonwealth v. Hall,* 366 Mass. 790, 323 N.E.2d 319 (1975) (tighter requirement suggested by *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970)); *see, e.g., United States v. Guidry,* 534 F.2d 1220, 1223 (6th Cir.1976) (evidence of counterfeiting in process of destruction); *contra United States v. Wilcox,* 357 F.Supp. 514 (E.D.Pa.1973) (destruction in progress is too narrow a reading of Supreme Court cases; belief of threatened destruction required; presence of other persons on premises not justify such belief); *United States v. Rubin,* 474 F.2d 262, 266 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *United States v. Blake,* 484 F.2d 50, 55 (8th Cir.1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974).

 We need not resolve whether this exception requires that the destruction of the evidence be in progress, because the meaning of "exigency" will be sufficient to decide this case. In *Chimel,* the Supreme Court required a showing that the exigencies of the situation made the policemen's course of conduct *imperative.* 395 U.S. at 761, 89 S.Ct. at 2039, 23 L.Ed.2d at 693 (emphasis added) (quoting *McDonald*

*v. United States,* 335 U.S. at 456, 69 S.Ct. at 193, 93 L.Ed. at 158). Further, the Court noted that searching without a warrant is always considered a strictly limited right that grows only out of the *inherent necessity* of the situation at the time of the arrest. 395 U.S. at 759, 89 S.Ct. at 2038, 23 L.Ed.2d at 691 (quoting *Trupiano v. United States,* 334 U.S. at 705, 708, 68 S.Ct. at 1234, 92 L.Ed. at 1667, 1671). In *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), the Supreme Court noted that a warrant was required to search a home unless the exigencies were *compelling.* 437 U.S. at 394, 98 S.Ct. at 2414, 57 L.Ed.2d at 301 (emphasis added). *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966), has been cited as finding an exigency where the destruction of evidence is *imminent. Mincey v. Arizona,* 437 U.S. at 394, 98 S.Ct. at 2414, 57 L.Ed.2d at 301 (emphasis added). *See also United States v. Williams,* 604 F.2d 1102, 1122–23 (8th Cir.1979), *citing Ker v. California,* 374 U.S. 23, 40–41, 83 S.Ct. 1623, 1633–1634, 10 L.Ed.2d 726, 742 (1963); *United States v. Blake,* 484 F.2d 50, 54 (8th Cir.1973), *cert. denied,* 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Rubin,* 474 F.2d 262 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). In *Vale v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970), the Supreme Court invalidated a warrantless search and noted it was not an exigency within the four recognized exceptions. The officer was not responding to an emergency (citing *United States v. Jeffers,* 342 U.S. 48, 52, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951)), he was not in hot pursuit (citing *Warden v. Hayden,* 387 U.S. 294, 298–99, 87 S.Ct. 1642, 1645–46, 18 L.Ed.2d 782, 787 (1967)), the goods were not in the process of destruction (citing *Schmerber v. California,* 384 U.S. 757, 770–71, 86 S.Ct. 1826, 1835–36, 16 L.Ed.2d 908, 919 (1966)), and the goods were not about to be removed from the jurisdiction (citing *Johnson v. United States,* 333 U.S. 10, 15, 68 S.Ct. 367, 369, 92 L.Ed. 436, 441 (1948); and *United States v. Jeffers, supra* ) 399 U.S. at 35, 90 S.Ct. at 1972, 26 L.Ed.2d at 414. The Supreme Court thus has indicated that the exception for exigent circum-

stances is to be construed narrowly. *See United States v. Rubin,* 474 F.2d at 268, *citing Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In the situation where the destruction or removal of evidence is urged as justifying a warrantless search, it must be a situation where there was an immediate, urgent, and compelling need for the police action. *See United States v. Rubin,* 474 F.2d at 266 (high standards of exigency necessary to justify warrantless search).

The remaining question is whether the presence of third persons who could destroy or remove evidence is viewed as an exigency justifying a warrantless search or seizure. In *United States v. Blake,* a third person on the premises when the police entered tried to conceal evidence by throwing it down the laundry chute. 484 F.2d at 53. The officer went into the basement without a warrant to recover the evidence. *Id.* The Court upheld the search recognizing that there were no grounds to arrest the defendant at that point and his repeated actions to throw the evidence (a purse) away indicated that destruction or removal of the evidence was highly likely. *Id.* at 55–56. The Court's test was whether the destruction or removal of the evidence was imminent, determined from the totality of the factual circumstances, and not merely *"possible." Id.* at 56 (emphasis by the Court). The Court considered the following factors: (1) the importance of time; (2) that the officer knew that the particular person had attempted to conceal the evidence; and (3) that that person was on the premises and not under arrest. *Id.*[1]

---

1. In *United States v. Rubin,* the Court listed five factors to consider: "(1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating the possessors of contraband are aware that the police are on their trail; and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.'" (Citations omitted). 474 F.2d at 268–69.

■ In *Chimel v. California,* Justice White argued in dissent that the presence of the arrestee's wife justified the warrantless search because of the delay of returning with a warrant. "[I]t seems very likely that petitioner's wife, who in view of petitioner's generally garrulous nature must have known of the robbery, would have removed the [stolen] coins." 395 U.S. at 775, 89 S.Ct. at 2046–47, 23 L.Ed.2d at 701. This argument did not persuade the majority. The argument was again urged in Justice Black's dissent in *Vale v. Louisiana,* where petitioner's mother and brother had just arrived at the house. 399 U.S. at 37–38, 90 S.Ct. at 1973–74, 26 L.Ed.2d at 415–16. Again, the argument was not accepted by the majority. Therefore, mere presence of third persons is not an exigency that will justify a warrantless search of the home. The police action must be justified by an immediate and compelling need and not by an inference about a future possibility.

■ Finally we emphasize that the burden of establishing exigent circumstances is on the State, *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948), and that the facts and circumstances upon which the question of reasonableness depends must be viewed in the light of established fourth amendment principles. *Chimel,* 395 U.S. at 765, 89 S.Ct. at 2041, 23 L.Ed.2d at 695.

### III

We now turn to the question of whether the search and seizure of the shotgun barrel in this case, without a warrant, violated the fourth amendment. As we have noted, two rationales exist to justify a warrantless search or seizure incident to arrest.

■ First is the question of whether the search is justified under *Chimel* as within the area of appellant's reach or grasp. We hold that it was not. Appellant was out

of the attic and handcuffed; therefore, it cannot be argued that, from the floor below, the area of the attic was within his grasp.[2] This situation is unlike *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983), where the arrestee was next to a partially open drawer of a nighttable. The *Foster* situation was mentioned specifically by the Supreme Court in *Chimel* and clearly falls within the exigency rationale of *Chimel.* 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. To approve of the search in the instant case we would have to approve a search of the entire attic as within appellant's grasp while he was on the floor below. In *Chimel,* the Court noted that "[t]here is no . . . justification . . . for routinely searching any room other than that in which an arrest occurs—or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself." 395 U.S. at 763, 89 S.Ct. at 2040, 23 L.Ed.2d at 694. Here, the police did not limit their search to the area surrounding the attic hatchway. Although the evidence is unclear, the officer apparently searched far into the attic because he recovered the evidence very close to where appellant had been lying. The fact that the officer had to use his flashlight to see appellant and that appellant had to crawl back to the hatchway suggest he was well into the attic. Further, the State does not argue against this conclusion except on the basis of *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981). But as we discussed above, *Belton* should not be read so expansively.

Next, we move to the question of whether the circumstances in the instant case constitute exigent circumstances that justified a warrantless search. The State contends that the presence of appellant's sister who was free to reenter

---

2. Under " 'the "wingspan" limitation of *Chimel,* . . . a search incident is limited to that area within the lunge, within the reach, within the grasp of the arrestee—the area "which may fairly be deemed to be an extension of his person"—the area within which the arrestee might grab for weapons or destroy evidence.' " *Bouldin v. State,* 276 Md. 511, 518, 350 A.2d 130, 134 (1976) (quoting *Dixon v. State,* 23 Md.App. 19, 27, 327 A.2d 516, 521 (1974)).

the house presented an exigency because she could have destroyed or removed the evidence. Such exigency is urged because she lied to the police on two occasions. First, she corroborated appellant's misidentification of himself, and later she told police that she was alone in the house.

The law is settled that the mere presence of third persons does not create exigent circumstances that justified a warrantless search. The argument was rejected in both *Chimel v. California, supra,* and *Vale v. Louisiana, supra,* where it was urged in dissent. Such a rule would eliminate the fourth amendment protection for all occupants of a home whenever an arrestee lived in a home with family or others. The State contends that the exception is limited because the police would be required to have probable cause, but the fourth amendment interposes a magistrate between citizens and police. A warrantless search cannot be justified by probable cause, because that is the very determination for which the constitution requires a warrant hearing. In the instant case the police apparently searched the attic because they believed there might be evidence of the crimes concealed where appellant was hiding. However, "[b]elief, however well founded, that an article sought is concealed in a dwelling house furnishes no justification for a search of that place without a warrant. And such searches are held unlawful notwithstanding facts unquestionably showing probable cause." *Chimel,* 395 U.S. at 762, 89 S.Ct. at 2039, 23 L.Ed.2d at 693, *quoting Agnello v. United States,* 269 U.S. at 33, 46 S.Ct. at 6, 70 L.Ed. at 149, *quoted with approval in Everhart v. State,* 274 Md. 459, 475, 337 A.2d 100, 109 (1975).

Because the mere presence of the sister cannot justify a search, this case hinges on the fact that she lied to the police. We do not believe that this fact presented an exigency that threatened destruction or removal of evidence. This fact does not rise to the level of the facts in *United States v. Blake,* where the police observed the third person twice attempt to dispose of evidence. 484 F.2d at 53. The meaning of exigent circumstances is that the police are

confronted with an emergency—circumstances so imminent that they present an urgent and compelling need for police action. The circumstances present in this case do not rise to that level. Through her lies the sister sought to prevent the arrest of her brother. No evidence suggests physical resistance, or failure to follow police orders, or even knowledge of the robbery or evidence thereof. In fact, neither lie affected the policemen's actions in any way or even caused them to hesitate. At most, the police suspected that there was a *possibility* that she *may* later attempt to destroy or conceal evidence. The police, therefore, were not presented with imminent circumstances at the time of the arrest.

Moreover, the State's failure to prove exigent circumstances were present in this case is determinative. The burden is on those seeking the exemption to show the need for it. *Coolidge v. New Hampshire,* 403 U.S. 443, 455, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *United States v. Jeffers,* 342 U.S. 48, 51, 72 S.Ct. 93, 95, 96 L.Ed. 59, 64 (1951); *McDonald v. United States,* 335 U.S. 451, 456, 69 S.Ct. 191, 193, 93 L.Ed. 153, 158 (1948). Further, in determining the lawfulness of the search we may concern ourselves only with what the police officers believed at the time. *Ker v. California,* 374 U.S. at 40 n. 12, 83 S.Ct. at 1633 n. 12, 10 L.Ed.2d at 742 n. 12; *Johnson v. United States,* 333 U.S. 10, 17, 68 S.Ct. 367, 370, 92 L.Ed. 436, 442.[3]

The State did not show that at the time of the search in the instant case the officers believed that the sister presented a threat of the destruction of evidence. In fact, the evidence suggests to the contrary. Officer Thomas's testimony makes no mention of the sister at that point. He simply stated that after they had the appellant out of the attic, he then went back up into the attic to search. The

---

**3.** " 'A search is not to be made legal by what it turns up. In law it is good *or bad* when it starts and does not change character from' what is dug up subsequently." *Ker v. California,* 374 U.S. at 40 n. 12, 83 S.Ct. at 1633–34 n. 12, 10 L.Ed.2d at 742 n. 12 (emphasis added by Court) (quoting *United States v. Di Re,* 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210, 220 (1948)).

sister was outside at the time with other police officers and there is no showing that Officer Thomas gave any consideration to her at all. The officer appears to have acted on the belief that some evidence of the crime might be found where appellant had been hiding. Such a belief, no matter how strong or correct, cannot justify a warrantless search.

■ Further, the police could not have believed that evidence was likely to be destroyed or removed because at that point in time they did not know that there was any evidence. For instance, in narcotic cases where warrantless search and seizures have been upheld because of the presence of third persons, the police knew that narcotics were present on the premises and the other persons were likely to destroy the easily destroyed contraband. *Thomas v. Parett,* 524 F.2d 779 (8th Cir.1975); *United States v. Rubin,* 474 F.2d 262 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *Henson v. State,* 236 Md. 518, 204 A.2d 516 (1964); *State v. Patterson,* 192 Neb. 308, 220 N.W.2d 235 (1974). Here, the police had no knowledge that any evidence was in the house. The officer did not know he was looking for a gun. He simply was looking for evidence of the offense whether it was a gun barrel, some money, or a wallet. The police could not have believed at the time of the arrest that evidence was threatened because they did not know at that time that there was any evidence. An argument that the police were presented with exigent circumstances at the time of the arrest, no matter how persuasive on appeal, is irrelevant if the State did not meet its burden in establishing that belief at trial.

Therefore, considering the facts and circumstances surrounding this case in light of established fourth amendment principles, *Chimel v. California,* 395 U.S. at 765, 89 S.Ct. at 2041, 23 L.Ed.2d at 695, we hold that exigent circumstances did not justify a search of the attic and seizure of the gun barrel. The search and seizure violated the fourth amendment; hence, admission of the gun barrel into evidence was error. Furthermore, we cannot say, beyond a reasonable

doubt, that this error was not prejudicial. *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665, 678 (1976).

JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AND REMAND TO THAT COURT FOR A NEW TRIAL.

COSTS TO BE PAID BY ANNE ARUNDEL COUNTY.

MURPHY, C.J., and SMITH, J., dissent.

SMITH, Judge, dissenting.

The majority recognizes that exigent circumstances may permit a warrantless search and seizure. I believe the police were faced with exigent circumstances in this case. It will be remembered, as the majority opinion indicates, that Stackhouse had been identified from a photograph as the perpetrator of the crime. A tracking dog had followed his trail from the scene of the crime to his place of residence. Stackhouse answered the door to the police at that residence. He falsely identified himself to the police as James Lewis. His foster sister confirmed this identification. The police learned that James Lewis was Stackhouse's alias and that arrest warrants were outstanding for Stackhouse pertaining to unrelated armed robberies at the same Holiday Inn. They then returned to the residence to serve the warrants. At that time the foster sister denied that Stackhouse was present. In fact he was hiding in the attic. I submit that if the foster sister would lie about his identity and then lie about his presence, it was reasonable on the part of the police officers to believe that she would destroy or secrete elsewhere any evidence pertaining to the crime which might be on the premises.

2 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 6.5(b), at 438 (1978), states, "Notwithstanding the claim in *Vale* [*v. Louisiana,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 (1970),]* that exceptions to the warrant

requirement are 'specifically established and well-delineated,' it is closer to the truth to say that the 'emergency circumstances exception is "established," but it has not been "well delineated," ' ' " citing *United States v. Rubin,* 474 F.2d 262 (3d Cir.), *cert. denied,* 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973). Professor LaFave had earlier commented, "[I]t is suggested ... that the *Vale* formulation does not encompass all truly exigent circumstances because it does not speak of threatened destruction of evidence ...." *Id.* at 437. He goes on to comment:

"Generally, it may be said that the lower courts have not accepted the *Vale* formulation as controlling. They have been inclined to state the exception in broader terms, such as a 'great likelihood that the evidence will be destroyed or removed before a warrant can be obtained,' that the evidence is 'threatened with imminent removal or destruction,' or that the police 'reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant.' The most careful treatment of this point appears in *United States v. Rubin,* where the court, after noting the broader dictum in *Johnson* [*v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948)], *McDonald* [*v. United States,* 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948)], and [*United States v.*] *Jeffers,* [342 U.S. 48, 72 S.Ct. 93, 96 L.Ed. 59 (1951),] concluded that the *Vale* language should not be taken too seriously in light of the Court's assumption that not even a threat of destruction was present." *Id.* at 438–39.

In *Rubin* the court said, after referring to *Vale*:

"Although the Court had always spoken of 'threatened' destruction or removal of evidence in previous cases involving the emergency exception, in *Vale,* 399 U.S. at 35, 90 S.Ct. 1969 [at 1972, 26 L.Ed.2d 409], it spoke for the first time of goods 'in the process of destruction.' Although the language might suggest that the emergency exception must be construed to require knowledge that the evidence is actually being removed or destroyed, the omission of a single word should not be given such signifi-

cance, especially in light of the facts in *Vale. . . .* The facts did not support a belief by the arresting officers that there was even a 'threatened' destruction or removal of the narcotics. No exigent circumstances justifying the search existed." 474 F.2d at 267.

After that which I have previously quoted from his work, LaFave goes on to state:

"The court in *Rubin* then formulates this test:

When Government agents, however, have probable cause to believe contraband is present and, in addition, based on the surrounding circumstances of the information at hand, they reasonably conclude that the evidence will be destroyed or removed before they can secure a search warrant, a warrantless search is justified. The emergency circumstances will vary from case to case, and the inherent necessities of the situation at the time must be scrutinized. Circumstances which have seemed relevant to courts include (1) the degree of urgency involved and the amount of time necessary to obtain a warrant * * *; (2) reasonable belief that the contraband is about to be removed * * *; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought * * *; (4) information indicating the possessors of the contraband are aware that the police are on their trail * * *; and (5) the ready destructibility of the contraband and the knowledge 'that efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic.' [474 F.2d at 268–69]

"It is useful to take note of the facts which the court in *Rubin* found were sufficient to meet this test, for they serve as a meaningful vehicle for exploring several aspects of the emergency exception. Customs agents received reliable information that a bronze statue containing a large shipment of illicit drugs would be shipped to a hospital in a certain area. Agents were posted at the airport and waterfront, and finally a crate answering the general description given by the informant arrived at the

airport from abroad. It was inspected and found to contain narcotics. Agents observed one Agnes pick up the crate and take it to a certain address, where it was unloaded at about 5 p.m. After one agent was dispatched to secure a search warrant, Agnes left the premises in his car but without the crate. He was tailed for a short distance, but when his evasive actions led agents to believe he was aware of the tail, they arrested him. When he was placed under arrest about six blocks from the house in question, he yelled to spectators to call his brother. At this point the agents, fearing disposal of the narcotics if they waited for the search warrant, entered the house and searched for and seized the narcotics." *Id.* at 439–40.

The Third Circuit pointed out in *Rubin,* "The Supreme Court has never spoken in a case such as this one where the searching officers know there is in fact a large quantity of contraband narcotics in a dwelling, and they are apprehensive that it may be removed or destroyed." 474 F.2d at 268. In this case the searching officers did not *know* that incriminating evidence was present but there certainly was probable cause for such a belief. It thus is significant that in *Rubin* the court said, "We find no requirement that officers must know of the removal or destruction in order to make the search." *Id.*

The suggestion may be made that the police officers here could have detained the foster sister and impounded, so to speak, the premises while they sought a search warrant. Before *Vale,* 399 U.S. 30, 90 S.Ct. 1969, 26 L.Ed.2d 409 was decided, no less an authority than Erwin N. Griswold, then Solicitor General of the United States, said in *Criminal Procedure, 1969—Is It A Means Or An End?*, 29 Md.L.Rev. 307, 317 (1969):

"Does the police officer have any power to maintain the status quo while he, or a colleague of his, is taking the time necessary to draw up a sufficient affidavit to support an application for a search warrant, and then finding a magistrate, submitting the application to him, obtaining

the search warrant if it is issued, and then bringing it to the place where the arrest was made. It seems inevitable that a minimum of several hours will be required for this process, at the very best. Unless there is some kind of a power to prevent removal of material from the premises, or destruction of material during this time, the search warrant will almost inevitably be fruitless. . . . May they guard the premises, and prevent egress and entry, and action within the premises, while the search warrant is being obtained? We do not know."

Some courts have found impoundment to be impermissible. *See, e.g., Haynes v. State,* 269 Ark. 506, 511, 602 S.W.2d 599 (1980); *State v. Dorson,* 62 Haw. 377, 615 P.2d 740 (1980).

The determination of whether exigent circumstances exist because the evidence is threatened with destruction or removal must be made in light of the particular facts of the case. An important issue is whether the police acted reasonably in conducting an immediate, warrantless search rather than waiting to obtain a search warrant. *See United States v. McEachin,* 670 F.2d 1139, 1145 (D.C.Cir.1981); *United States v. Hendrix,* 595 F.2d 883, 885–86 (D.C.Cir.1979); *State v. Huff,* 220 Kan. 162, 166–67, 551 P.2d 880 (1976); *State v. Bradley,* 264 N.W.2d 387, 388 (Minn.1978).

Decisions which have upheld warrantless searches on the basis of exigent circumstances in addition to *Rubin,* 474 F.2d 262, include *McEachin; Hendrix; Durham v. United States,* 237 A.2d 830 (D.C.1968); *Huff; Bradley;* and *People v. Clements,* 37 N.Y.2d 675, 339 N.E.2d 170, 376 N.Y.S.2d 480 (1975). I find significant what the New York Court of Appeals said in *Clements.* There an informant purchased marijuana on the premises and then left. He told officers the precise location of the marijuana supply (a certain dresser drawer). The police entered, arrested the two occupants, and then searched the drawer without a warrant. In upholding the search, the court said:

"It is suggested that rather than proceeding immediately to take possession of the concealed contraband, the police should have maintained a surveillance of defend-

ants' apartment for such period of time as would have been required to obtain a search warrant. The adoption of any such proposal, we suggest, as a practical matter, would necessarily have exposed these defendants to a much more objectionable intrusion than did the seizure here.

"While such an alternative might be verbalized as only a 'surveillance', on reflection one must be convinced that for the police merely to have manned an outside observation post would have been wholly inadequate to protect this contraband. As a practical matter the police would have had to take possession of defendants' apartment, including surely all means of ingress and egress. Any person entering or leaving the apartment would have had to have been at least stopped and probably then restrained. Control of the areas adjoining the dresser would have had to have been assured. In sum this proposal would have entailed a much greater intrusion in both space and time than that to which defendants were actually subjected.

"Nor, more notably, would defendants in such event have had the protection of an interposed appraisal of probable cause for the more extensive intrusion by any neutral or detached Magistrate. Time and circumstance would no more have permitted postponement of police action to allow for presentation to a Magistrate for this purpose than for issuance of a search warrant.

"Confronted, as we think the officers here were, with the necessity to take some police action without delay, we cannot conclude that the action they chose to take must be struck down as unlawful. Faced with alternatives, as to none of which could there have been any preliminary independent judicial scrutiny, we cannot think that a fair or sensible balancing of the competing private and public interests demands that the greater intrusion be preferred over the lesser. (Cf. *People v. Kreichman,* 37 N.Y.2d 693 [376 N.Y.S.2d 497, 339 N.E.2d 182]; *People v. Perel,* 34 N.Y.2d 462, 467 [358 N.Y.S.2d 383, 315 N.E.2d 452]; *United States v. Evans,* [9 Cir.], 481 F.2d 990.)

"We hold that there was no infringement of the constitutional rights of these defendants. Other courts confronting similar factual situations have denied suppression. (E.g., *United States v. Pino* [2 Cir.], 431 F.2d 1043, cert. den. 402 U.S. 989 [91 S.Ct. 1675, 29 L.Ed.2d 154]; *United States v. Lozaw,* [2 Cir.], 427 F.2d 911; *State v. Wiley,* 522 S.W.2d 281 [Mo].) They have not held themselves bound by the unreasonably simplistic concept of 'grabbable reach' attributed to *Chimel* [*v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969)]. (See *People v. Perel, supra,* [34 N.Y.2d] p. 467 [358 N.Y.S.2d 383, 315 N.E.2d 452].)" 37 N.Y.2d at 680–82, 339 N.E.2d 170, 376 N.Y.S.2d 480.

I see no way for the officers here to have preserved the status quo pending the procurement of a search warrant short of an illegal intrusion caused either by taking the foster sister into custody, or impounding the premises, or both. Given the fact that the foster sister had lied to the police as to the identity of the accused and that she again lied when the police returned by asserting that he was not on the premises when in fact he was, it seems to me probable that she would destroy or secrete elsewhere any evidence that might be on the premises once the accused had been taken into custody and thereby removed from the area.

It will be recalled that *Rubin,* 474 F.2d 262, referred to five circumstances which have seemed relevant to courts in scrutinizing warrantless searches under exigent circumstances: (1) the degree of urgency involved and the amount of time necessary to obtain a warrant; (2) reasonable belief that the contraband is about to be removed; (3) the possibility of danger to police officers guarding the site of the contraband while a search warrant is sought; (4) information indicating that the possessors of the contraband are aware that the police are on their trail; and (5) the ready destructability of the contraband and the knowledge that "efforts to dispose of narcotics and to escape are characteristic behavior of persons engaged in the narcotics traffic." Obviously, the latter part of (5) has no bearing here.. The

first part of (5) is relevant because although the gun in question could not have been destroyed, it certainly could have been secreted elsewhere. Stackhouse and his sister were well aware that the police were on his trail because he had been taken into custody. There would have been no possibility of danger to police officers guarding the site of the contraband while a search warrant was sought, but maintaining the status quo would have required an obvious intrusion. The presence of the sister who had lied certainly makes reasonable a belief that the evidence would have been removed. Given the time required to obtain a search warrant, removal would have been facilitated were there no intrusion by seizing the foster sister and the premises.

I think the realities and the practicalities of the situation here called for the action that was taken by the police officers. They had probable cause to believe evidence linking Stackhouse with the crime in question was on the premises. They reasonably could conclude that the evidence would be destroyed or removed before they could secure a search warrant. Thus, under these circumstances there was no infringement upon the constitutional rights of Stackhouse. There is no Supreme Court case holding on facts such as these that the search was improper. There are opinions by respected courts holding that such action was proper. Hence, I would affirm.

I am authorized to state that Chief Judge MURPHY concurs in the views here expressed.