574 A.2d 345

Vaya Condios SHUMAN

v.

STATE of Maryland.

No. 1500, Sept. Term, 1989.

Court of Special Appeals of Maryland.

June 5, 1990.

Victoria S. Keating, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ann N. Bosse, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before GILBERT, C.J., and WILNER and BLOOM, JJ.

GILBERT, Chief Judge.

"A search is not to be made legal by what it turns up. In law it is good or bad when it starts and does not change character from its success." [1]

At a non-jury trial in the Circuit Court for Baltimore City, Vaya Condios Shuman was convicted of possession of cocaine with the intent to distribute. For the reasons hereinafter expressed, we shall reverse the judgment of the circuit court because Shuman's motion to suppress the evidence should have been granted.

---

1. *United States v. Di Re*, 332 U.S. 581, 595, 68 S.Ct. 222, 229, 92 L.Ed. 210 (1948).

### The Facts

Shuman and his apparently estranged girlfriend, Rhonda Fowlkes, were in Shuman's apartment when an argument erupted between the two. During the course of the fracas, Fowlkes called the Baltimore City Police, informing them that Shuman had threatened her. Shortly thereafter, officers arrived at the scene.

The first to arrive at Shuman's apartment was Officer Michael Cichowicz. Noticing that the door to Shuman's apartment was ajar and hearing what he believed to be a heated domestic dispute, Cichowicz entered the apartment without knocking or announcing himself. Rhonda immediately told the officer that Shuman had threatened her with a revolver, and that Shuman had gone into the bedroom to put the gun in a guitar case. Before Cichowicz could reach the bedroom, Shuman emerged from that room and entered the living room.

Shuman and Cichowicz disagree as to what happened after Shuman entered the living room, but irrespective of which version is believed, Shuman's freedom of movement in and about his apartment was restrained by other newly arriving officers.[2] Once Shuman was detained, Cichowicz went into the bedroom, searching for the guitar case. He located the case on top of a bed but was unable to open it because it was locked.

Cichowicz confronted Shuman and requested the keys to the case. Shuman complied with Cichowicz's request for the keys and handed them to the officer. Cichowicz re-entered the bedroom, opened the locked case, removed a guitar from the case, and observed a closed compartment within the case. Upon opening the compartment, Cichowicz

---

**2.** Shuman maintains he was removed from his apartment and detained in the hallway by an unidentified officer. Cichowicz asserts that Shuman was merely in the company of responding officers in Shuman's living room.

found $216.00 in cash and a quantity of cocaine.[3] Shuman was then arrested.

Prior to trial, Shuman moved to suppress the cash and cocaine seized from the guitar case. The State maintained that the search and seizure was proper under the Fourth Amendment because the search took place under exigent circumstances, thereby negating the need for a warrant. Agreeing with the State, the trial judge denied the motion to suppress, and Shuman was then tried before the court and convicted. This appeal ensued.

## The Law

■ Shuman maintains that the trial court erred in denying a motion to suppress the drugs found inside the locked guitar case. It is well established in this country that a person has a high expectation of privacy in his or her home. Absent probable cause to arrest for a felony *and* exigent circumstances, "searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980). Requiring the State or federal government, as the case may be, to have probable cause to arrest for a felony protects the individual from arbitrary or malicious action and imposes a limitation upon invasion of the home, except in cases of serious crimes. *See Welsh v. Wisconsin*, 466 U.S. 740, 750, n. 12, 104 S.Ct. 2091, 2098, n. 12, 80 L.Ed.2d 732 (1984).

There are, however, circumstances where a search of a house is reasonable absent a search warrant or probable cause. *Skinner v. Railway Labor Executives' Ass'n*, 489 U.S. ——, ——, 109 S.Ct. 1402, ——, 103 L.Ed.2d 639 (1989); *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 3167, 97 L.Ed.2d 709 (1987); *New Jersey v. T.L.O.*, 469 U.S. 325, 340–41, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985);

---

**3.** During trial it was brought to light that Shuman had not threatened Rhonda with a handgun. She had told the police that Shuman had a gun because she was angry.

*Terry v. Ohio*, 392 U.S. 1, 20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). Those circumstances require a balancing of the intrusion on the individual's Fourth Amendment rights against the promotion of legitimate governmental interests. *Maryland v. Buie*, 494 U.S. ——, 110 S.Ct. 1093, 108 L.Ed.2d 276 (1990); *see also Skinner*, 489 U.S. at ——, 109 S.Ct. at ——; *United States v. Villamonte–Marquez*, 462 U.S. 579, 588, 103 S.Ct. 2573, 2579, 77 L.Ed.2d 22 (1983); *Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979).

In the case *sub judice*, Shuman was not under arrest at the time of the search, nor did he, as the trial court correctly concluded, consent to the search of the guitar case. Furthermore, the record is absolutely devoid of any evidence whatsoever that Officer Cichowicz possessed anything more than a "inchoate and unparticularized suspicion or hunch" when he entered Shuman's apartment "that he ... [could] be dealing with an armed and [or] dangerous individual." *Terry v. Ohio*, 392 U.S. at 27, 88 S.Ct. at 1883.

Assuming, *arguendo*, that Officer Cichowicz's entry into Shuman's apartment was a valid entry in the first instance, the subsequent search was nonetheless a "fishing expedition."

Having gained entry into the apartment, Cichowicz and at least one other officer restrained Shuman's freedom of movement. Whether that restraint occurred in the hallway or the living room is irrelevant.[4] At that point any exigency concerning the alleged handgun ceased. Shuman was not in a position to "lunge, reach or grab" the handgun in question. *See Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). It was an impossibility for Shuman to leave the presence of the police officers, enter the bedroom, unlock the guitar case, and retrieve a

---

4. Because Shuman was not under arrest at the time of the search, the search cannot be characterized as a search incident to an arrest. Therefore, there is no need to address the issue of whether the search would have been proper as a search incident to arrest.

handgun. It is inconceivable that under the attendant circumstances the officers or Rhonda were in any imminent danger or fear.

To justify the search of Shuman's guitar case, the State bears the burden of demonstrating that Officer Cichowicz was acting under exigent circumstances. *Stackhouse v. State,* 298 Md. 203, 217, 468 A.2d 333 (1983). In this Court, the State argues that Cichowicz was confronted with exigent circumstances because of the nature of domestic disputes, coupled with the presence of a gun. The State reasons that if the officer had not acted to locate and seize the gun, he, Rhonda, and even Shuman were in danger of death or serious bodily harm. Furthermore, the State says that, after the police left, either Rhonda or Shuman could have retrieved the gun and used it on the other.

There is little doubt that domestic disputes contain the potential for physical violence. Moreover, it is not uncommon for police officers to become the targets of domestic violence once they arrive upon the scene and become the focal point. The police must act to protect not only themselves but also the parties to the dispute. The Supreme court in *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978), put it thusly:

"We do not question the right of the police to respond to emergency situations. Numerous state and federal cases have recognized that the Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid. .... 'The need to protect or preserve life or avoid serious injury is justification for what would be otherwise illegal absent an exigency or emergency.' *Wayne v. United States,* 115 U.S.App. D.C. 234, 241, 318 F.2d 205, 212 (opinion of Burger, J.). And the police may seize any evidence that is in plain view during the course of their legitimate emergency activities. *Michigan v. Tyler,* [436 U.S. 499] *supra,* at 509–510 [98 S.Ct. 1942, 1949–50, 56 L.Ed.2d 486 (1978)];

*Coolidge v. New Hampshire,* 403 U.S. [443], at 465–466 [91 S.Ct. 2022, 2037–38, 29 L.Ed.2d 564 (1971) ]."

*Mincey,* 437 U.S. at 392–93, 98 S.Ct. at 2413 (footnotes omitted).

The Maryland Court of Appeals has observed that "exigency implies urgency, immediacy, and compelling need." *Stackhouse,* 298 Md. at 212, 468 A.2d 333. Any exigency which existed in the instant case at the time of Officer Cichowicz's entry into Shuman's apartment ceased when Cichowicz discovered the guitar case was locked. To open the guitar case validly and seize any objects contained therein required a search warrant. There was no exigency. There was no warrant, and the evidence seized was the result of an illegal search and should have been suppressed.

*Vaya con Dios,* Vaya Condios.

JUDGMENT REVERSED.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.