472 A.2d 83

**Donald Carl SPIERING and Cathy Leigh Spiering**

v.

**STATE of Maryland.**

**No. 570, Sept. Term, 1983.**

Court of Special Appeals of Maryland.

March 7, 1984.

2

Gary W. Christopher, Asst. Public Defender, with whom was Alan H. Murrell, Public Defender, on brief, for appellants.

Gertrude C. Bartel, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., Starke M. Evans, State's Atty., Caroline County, Karen Kaludis, Deputy State's Atty., Caroline County, on brief, for appellee.

Argued Before LOWE, WEANT and GETTY, JJ.

GETTY, Judge.

On April 2, 1982, members of the Maryland State Police were conducting a surveillance of one Martin Bowman, a resident of Ridgely, Caroline County, Maryland. A confidential informant had advised the police that Bowman would be purchasing a quantity of marijuana that evening. At 7:00 P.M. Bowman was observed in a truck on Route 313. Shortly thereafter, the truck stopped along the highway and the driver got out of the truck and walked into a wooded area. Bowman then drove the truck to the residence of Donald and Cathy Spiering, appellants herein, arriving at 7:38 P.M. At 7:52 P.M. Bowman left in the truck, returned to the wooded area where the first driver was waiting and at 8:05 P.M. the police stopped the vehicle and arrested Bowman for having in his possession two pounds of marijuana.

Immediately after Bowman's arrest, Trooper William Murphy instructed Trooper Richard Norman to maintain surveillance on the Spiering residence, to determine if anyone arrived at or left the residence, while Murphy went to obtain a search and seizure warrant for the premises. At approximately 8:30 P.M. Norman, accompanied by six other

officers, drove into the lane leading to the Spiering house, which has been described as an older type farmhouse surrounded by fields. Upon their arrival at the back door of the dwelling, one of the officers present advised Donald Spiering that the house was being impounded pending the issuance of a search and seizure warrant that was in the process of being prepared. The basis of the search, Spiering was told, was that the police believed that violations of law, relating to controlled dangerous substances, were taking place on the premises. Cathy Spiering was taken into custody outside the home as she was observed "crouching down" in a nearby field. According to Cathy, she was walking the dog when the police approached with drawn guns, searched her and returned her to the house.

Both appellants were detained in the living room, but were permitted to go to the bathroom or kitchen upon request. A cursory search of the premises was conducted for safety purposes and although the officers "could hardly make a step throughout the house without tripping over a bag of marijuana," no seizure took place until after the warrant was obtained. A request for consent to conduct a search was refused by appellants. The impoundment continued until approximately 11:30 P.M. when an officer returned with a search warrant. Thereafter, a search uncovered quantities of marijuana, hashish, L.S.D. and currency totaling $2,320.00.

Appellants were charged with various drug offenses and maintaining a common nuisance. Cathy elected a jury trial and Donald requested a court trial. A joint trial took place in the Circuit Court for Caroline County on January 7, 1983, and both were convicted of various counts of possession of controlled dangerous substances. Donald Spiering was also convicted of manufacturing marijuana, and maintaining a common nuisance. Donald received a net sentence of six years and Cathy's four year sentence was reduced by the suspension of two years of the term. This appeal followed.

Appellants allege:

1. The trial court erred in denying appellants' motion to suppress.
2. The trial court erred in imposing consecutive sentences upon Donald Spiering following his convictions for manufacturing and possession of marijuana with intent to distribute.

Appellants' argument on the suppression issue is two-fold. First, appellants insist that probable cause for the issuance of the warrant does not exist within the four corners of the warrant. Second, appellants contend that the warrantless impoundment of their home for a period of three hours until a warrant was obtained constitutes a seizure within the meaning of the Fourth Amendment, and because the object of the impoundment was the securing of the evidence sought to be suppressed, the trial court's ruling was error. The impoundment issue is one of first impression.

## Probable Cause

The warrant application and affidavit contains the following facts:

| | | |
|---|---|---|
| Friday, April 2, 1982 | – | Affiant contacted by confidential informant who reported that he/she had personal knowledge that Bowman was to purchase marijuana later that day. Bowman would leave his residence at 6:00 P.M. |
| 7:10 P.M. | – | Operator of a pickup truck and Bowman left Bowman's residence in the truck. |
| 7:12 P.M. | – | Operator of the truck entered a Texaco station and returned to the truck at 7:15 P.M. |
| 7:30 P.M. | – | Truck stopped and operator went into the woods along the highway. Bowman drove on in the truck. |
| 7:38 P.M. | – | Bowman drove the truck onto the Spiering property, turning the lights off at the driveway entrance. |
| 7:52 P.M. | – | Truck left the Spiering house and returned to the wooded area. |
| 8:01 P.M. | – | Other subject returned to the truck and drove it to Route 313. Vehicle stopped, interior light came on and police observed a one pound bag of marijuana being passed between Bowman and the driver. |
| 8:05 P.M. | – | Both subjects arrested and two pounds of marijuana confiscated. |

6

The affiant, TFC W.O. Murphy, recited that he was experienced in investigating drug transactions, that the informant had proved to be reliable, and that Bowman's activities in going to the Spiering residence alone is consistent with the practice of drug dealers who do not wish to reveal to their customers the identities of their suppliers.

■ The Supreme Court in *Illinois v. Gates,* —— U.S. ——, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), has approached probable cause in the context of "totality of the circumstances," thereby departing from the more restrictive requirements articulated in *Aguilar-Spinelli*.[1] The factual predicate establishing probable cause in this case is sufficient to satisfy either test. We turn to the two-pronged test of "basis of knowledge" and "veracity." The confidential informant is not identified beyond the attesting officer's statement that he/she had proved to be reliable in the past. The informant initiated the call, gave the name of the person who would be purchasing the drugs, specified that the sale involved marijuana, provided the exact date of the transaction and the approximate time thereof. The detailed information transmitted allows an inference of firsthand knowledge as a reasonable probability. *See Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). Additionally, the informant stated that the information was based upon personal knowledge. The detail was sufficient for the magistrate to conclude that the basis of knowledge was supported by firsthand data arising above innuendo or rumor.

"Veracity" is evident from independent police verification. The suspect was followed from his home within an hour of the time stated by the informant. He left his companion in the woods, proceeded to the Spiering residence, and twelve

---

1. *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

minutes later was apprehended while examining two pounds of marijuana after rejoining his confederate. The actions of the police, standing alone, are sufficient to establish probable cause; coupled with the informant's disclosures, authentication is reasonably demonstrated.

Appellants contend that the marijuana may have been in the truck from the beginning of the surveillance. That possibility exists, but probable cause for the issuance of a search warrant rests upon a common sense interpretation of facts contained in a sworn affidavit. What is to be satisfied at the warrant stage is the Fourth Amendment proscription of unreasonable searches and seizures; we are not dealing with the ultimate issue of guilt or innocence in considering the validity of the warrant. We hold that the trial judge's decision denying the motion to suppress, as it relates to the sufficiency of the warrant, is supported by substantial evidence.

### Impoundment

Appellants' secondary attack relates to the impoundment of their home for a three hour period prior to the issuance of the search warrant. Citing *United States v. Allard*,[2] appellants contend that the warrantless invasion of their home voids everything that followed. The State seeks to justify the intrusion based upon the 1980 Supreme Court case of *Rawlings v. Kentucky*.[3] A brief review of each decision is in order.

In *Rawlings* the police were unsuccessfully searching a house for a person for whom they had an arrest warrant. In the course of the search they smelled marijuana smoke and saw marijuana seeds. While two officers left to obtain a search warrant, other officers detained persons in the house stating that they could leave only if they consented to a

---

**2.** *U.S. v. Allard,* 634 F.2d 1182 (9th Cir.1980).

**3.** *Rawlings v. Kentucky,* 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

body search. Forty-five minutes later the officers returned with a search warrant which they read along with "Miranda" warnings to the three remaining occupants. Rawlings claimed ownership of certain controlled substances which one of the other occupants had earlier emptied out of her purse in response to an officer's order. Upon this admission, Rawlings was then searched and a large amount of cash was removed from his clothing. Charged with possession of the drugs with intent to distribute, Rawlings filed a motion to suppress both the drugs and the money. The Supreme Court affirmed the Supreme Court of Kentucky decision that appellant had no "standing" to challenge admission of the evidence. Because he had no reasonable expectation of freedom from intrusion into another person's purse, Rawlings' admission, after the *Miranda* warning, that he owned the drugs, justified the search of his person as incident to a lawful arrest based upon probable cause. It is clear to us that neither the Kentucky Court nor the Supreme Court addressed the issue of whether the appellant's admission to ownership of the drugs was the fruit of an unlawful detention.

In *Allard* one group of agents had gone to appellant's hotel room while another group was conducting a lawful search of a confederate's home. The group in the hotel room determined to "stay there whatever Mr. Berg (the occupant) did or said" and to refuse to permit Berg to leave. The agents then determined to obtain a search warrant. The United States Attorney was advised that the agents were in the room and would remain until the warrant was obtained. The United States Attorney prepared an application for a warrant which did not rely on any evidence discovered by the agents in the hotel room. Two hours later the warrant was obtained and executed.

The United States District Court upheld the warrant based upon its factual finding that the decision to obtain a warrant was not motivated by anything discovered during the illegal entry. In reversing, the United States Court of Appeals concluded that the officer who "secured" the hotel

room for a period of two hours in order to maintain the *status quo* while a search warrant was obtained had *seized* the room and its contents. Adequate deterrence of unlawful police activity, the Court stated, requires suppression under these circumstances unless the government can demonstrate that the seizure made no practical difference. "Absent a warrant or exigent circumstances, such *post hoc* justifications are alien to the Fourth Amendment warrant and reasonableness requirements." *Ibid.*

A similar result was reached in *United States v. Griffin,* 502 F.2d 959 (6th Cir.1974), *cert. denied,* 419 U.S. 1050, 95 S.Ct. 626, 42 L.Ed.2d 645 (1974). The facts therein are legally indistinguishable from the present case. Government agents, who had probable cause to search but no warrant, forcibly entered and secured an apartment. Contraband was in plain sight. An officer was dispatched to obtain a warrant. As in the present case the affidavit upon which the warrant was issued did not contain any facts discovered as a result of the illegal entry. No exigent circumstances were established. The Court held that absent exigent circumstances the police clearly may not force entry to a home because they think they have probable cause to believe evidence of crime may be found there. The fact that a warrant is being sought does not erase the taint of illegality. "Any other view would tend to emasculate the search warrant requirement of the Fourth Amendment." *Id.* Accord, *United States v. Hayes,* 518 F.2d 675 (6th Cir.1975).

Other cases dealing with the authority of the police to "maintain the *status quo*" while a warrant is being sought include the following:

*United States v. Segura,* 663 F.2d 411 (2d Cir.1981), (entry improper where there was no reason to believe that anyone in the apartment knew of defendant's arrest and was therefore about to destroy evidence); *United States v. Korman,* 614 F.2d 541 (6th Cir.1980), (controlled delivery of package of cocaine, defendant left house and was arrested, but didn't

have the cocaine, proper for agents to enter defendant's house while his family was present and secure premises while warrant was obtained); *United States v. DiGregorio,* 605 F.2d 1184 (1st Cir.1979), *cert. denied,* 444 U.S. 937, 100 S.Ct. 287, 62 L.Ed.2d 197 (securing premises for eight hours where there is probable cause to believe that evidence is in a house and a likelihood that the occupants will remove or destroy it pending issuance of a warrant—upheld where occupants were free to leave but could not remove property); *United States v. Edwards,* 602 F.2d 458 (1st Cir.1979), (impoundment for one and a half hours proper where controlled delivery of heroin to premises had occurred and it appeared that those within were aware of police stakeout); *Haynes v. State,* 269 Ark. 506, 602 S.W.2d 599 (1980), *cert. denied,* 449 U.S. 1066, 101 S.Ct. 795, 66 L.Ed.2d 611 ("We do not believe any provision of the constitution permits officers without a warrant to break down doors, to enter the premises of an individual and to detain him for several hours while waiting for a search warrant."); *State v. Matsen,* 287 Or. 581, 601 P.2d 784 (1979), (impoundment "is not lawful absent unforeseen and compelling circumstances" which are not present here as probable cause to get search warrant for house with continuing drug traffic existing for some time).

Impoundment, as evidenced by our brief citation of the above cases, is a relatively new concept.[4] A common thread running through the cases is the necessity on the part of the government to remove the taint of the illegal entry by establishing either consent or some exigent circumstances that will authorize the intrusion. Consideration of the constitutionality of such seizures, furthermore, involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public

---

4. Griswold, "Criminal Procedure, 1969—Is It A Means Or An End?", 29 Md.L.Rev. 307 (1969). "Does the police officer have any power to maintain the *status quo* while a colleague is taking the time to draw up a sufficient affidavit to support an application for a search warrant and then finding a magistrate . . . obtaining the warrant if it is issued and then bringing it to the place where the arrest was made . . . . We do not know."

interest and the severity of the interference with individual liberty. *Brown v. Texas,* 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979). Impoundment of premises where explosives are allegedly hidden, for example, presents an exigency that may not exist in a case involving stolen typewriters.

"The Fourth Amendment has interposed a magistrate between the citizen and the police . . . . The warrant procedure serves to insure that the deliberate, impartial judgment of a judicial officer will be interposed . . . to assess the weight and credibility of the information which the complaining officer adduces as probable cause." Gilbert & Moylan, *Maryland Criminal Law,* "Search and Seizure," Sec. 28.0.

The magistrate in *Allard* was unaware that the premises had already been seized. Whether the same situation existed in the present case is not entirely clear. We may reasonably infer that the magistrate was unaware of the earlier seizure, because the information contained in the affidavit is entirely independent of the knowledge gained by the impoundment of the house. What is quite clear, however, is that the withholding of the true facts from the magistrate in this or any case tends to eviscerate the very purpose of the warrant requirement which is to place a neutral third party between the public and the police. A very real possibility exists that a magistrate may refuse to issue a warrant, if the prior seizure was made known, under the classic *Wong Sun*[5] doctrine. Clearly, any fruit of the illegal seizure would be suppressed absent a search warrant. Even with probable cause to believe that a dwelling contains contraband or articles subject to seizure, there can be no search without a warrant, absent one of the recognized exceptions. *Jones v. United States,* 357 U.S. 493, 78 S.Ct. 1253, 2 L.Ed.2d 1514 (1958).

We are fully cognizant of the "independent source" analysis articulated by the Court in *Wong Sun.* To sanction

---

**5.** *Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

belated warrants based upon evidence independent of the initial seizure, however, would permit the police to view the warrant requirement as an *ex post facto* formality. In the present case, the police had already established a non-intrusive procedure to insure that the prey did not escape the trap. This was a farm house in a rural area with a single lane leading from the highway to the house. Any attempt by the Spierings to leave the house could easily be prevented. The only two persons who were aware of the drug transaction were under arrest. All the police needed to do was follow Trooper Murphy's instructions—maintain a surveillance on the house.

What the police may not do is create their own exigencies, as they did here, through illegal conduct, and then secure the premises on the theory that the occupants of the house would otherwise destroy the evidence or flee. We recognize that a different analysis may apply to vehicles. *See Chambers v. Maroney,* 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970).

The State suggests that under *Bartram v. State,* 33 Md. App. 115, 364 A.2d 1119 (1976), the police inevitably would have discovered the contraband. Absent a valid warrant, that conclusion is, at best, a mere possibility. We are not dealing with the identity of the "other woman" in a murder trial (*Bartram*), or the discovery of a corpse during an illegal entry (*Wayne v. U.S.,* 318 F.2d 205 (D.C.Cir.1963)), or illegally staking out premises to effect an arrest (*Somer v. U.S.,* 138 F.2d 790 (2d Cir.1943)). These cases, furthermore, dealt with derivative evidence that clearly would have come to light in due course. The prosecution of the two men arrested for possession of marijuana would not necessarily have led to the legal and inevitable discovery that the Spierings possessed additional contraband.

We agree, however, that the State is entitled to show, if it can do so, that exigent circumstances justified the warrantless intrusion, or that it would have independently discovered and successfully obtained the contraband.

In this case we are unable to determine whether the State can meet its burden, because the trial court ruled that appellants had not crossed the threshold of establishing lack of probable cause for the issuance of the warrant. The State, therefore, was not required to produce any testimony as to exigent circumstances or independent discovery. On retrial the State should be permitted to present whatever evidence, if any, it may have to counter the illegal entry.

Donald Spiering's contention that his convictions for manufacturing and possession with intent to distribute merge for sentencing purposes is without merit. Under the required evidence rule set forth in *Brooks v. State,* 284 Md. 416, 397 A.2d 596 (1979), it would appear that the offenses do not merge, because each requires proof of a fact that the other does not. Possession with intent to distribute requires evidence of a sufficient quantity to indicate an intent to distribute; the quantity is irrelevant to a charge of manufacturing. Manufacturing involves production of the controlled substance; possession does not.

JUDGMENTS REVERSED.

REMANDED TO CIRCUIT COURT FOR CAROLINE COUNTY FOR NEW TRIAL.

Costs to be Paid by Caroline County.