**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**William E. CAMPBELL, Defendant–Appellant.**

No. 90–5625.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 31, 1990.

Decided Sept. 4, 1991.

Albert James Ahern, Jr., Alexandria, Va., argued for defendant-appellant.

John Thomas Martin, Asst. U.S. Atty., Alexandria, Va., argued (Henry E. Hudson, U.S. Atty., on brief), for plaintiff-appellee.

Before WIDENER, Circuit Judge, CHAPMAN, Senior Circuit Judge, and HADEN, Chief District Judge for the Southern District of West Virginia, sitting by designation.

## OPINION

WIDENER, Circuit Judge:

William Campbell appeals his convictions of conspiracy to distribute, possession with intent to distribute, and distribution of cocaine in violation of 21 U.S.C. §§ 841 & 846. He alleges that the district court erred in failing to suppress evidence obtained during a search of his home conducted pursuant to a search warrant. Campbell also raises the additional claim that he was unduly prejudiced by the trial court's refusal to give an instruction defining reasonable doubt at his trial. After reviewing the instructions given as a whole, we find no merit in this latter contention.

However, we hold that the government's initial warrantless entry into Campbell's residence was not justified by exigent circumstances and was therefore in contravention of the Fourth Amendment. But this conclusion does not end our inquiry. Suppression of the evidence obtained is appropriate only if the illegal entry tainted the subsequently issued warrant. Such would not be the case if the search warrant was based upon a source genuinely independent of the prior illegal entry. *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1987). Accordingly, we remand for this determination.

The record reveals that after numerous prior smaller drug transactions, agents of the Drug Enforcement Administration made arrangements with Curtis Bibb to purchase a large quantity of cocaine on August 11, 1988. Special Agent Emile Manara, acting undercover, spoke by telephone with Bibb and agreed to a meeting to take place just following 3:00 p.m. in an Alexandria, Virginia restaurant to agree on terms for the transaction. At this meeting, Manara and Bibb tentatively agreed that Bibb would deliver the cocaine to Agent Manara in installments of eight ounces, cash payment for which would be made upon delivery. Bibb then suggested that they travel to a restaurant in Annandale, Virginia where Agent Manara would wait while Bibb attempted to obtain approval from his source and secure the cocaine. Bibb, under surveillance by other D.E.A. agents, then drove to 3540 Ewell Street, Campbell's residence, entered the residence, and then returned to the restaurant parking lot. Bibb produced the cocaine, the sale was transacted, and Bibb was arrested.

After Bibb was given *Miranda* warnings, he told Agent Manara that Elizabeth Campbell, William's wife, was the source of his cocaine; that he had acquired the cocaine for this and other transactions from the Ewell Street residence; and that nearly two additional pounds of cocaine were present in the basement. Bibb further stated that he was unsure what Elizabeth Campbell would do with the remaining cocaine if he did not return to the residence soon with the sale proceeds. These events occurred following 3:00 p.m. that day.

Agent Manara and the other law enforcement officers then decided to go to the Ewell Street residence, to which they had seen Bibb go, and where they thought Bibb had obtained his cocaine. At approximately 4:00 p.m., one hour after Bibb's arrest and statement, the agents assembled at the Ewell Street residence. Two of the ten or so agents present, without announcing themselves, knocked at the door with no result. Agent Manara then approached the door, knocked forcefully, and announced himself as a federal agent. When no reply was forthcoming, he kicked open the door and entered the residence. Once inside the residence, the agents encountered Elizabeth Campbell. She was wearing gloves and a pullover dress that was covered with what was later determined to be cocaine residue. The agents then made a protec-

tive sweep of the rooms, closets, seat cushions, and basement of the residence for other persons and weapons that might compromise their safety. During this protective sweep, the agents observed a large quantity of drugs and drug paraphernalia, and an answering machine cassette. Following this sweep, consent to a search was requested and refused.

While some of the agents waited on the premises, others applied for and were issued a warrant to conduct a search for illegal drugs and related paraphernalia and documents at the residence. Based in part upon evidence obtained from this residence, William Campbell was arrested, charged, and convicted of the charges as related above.

Campbell contends that the district court erred in refusing to suppress the evidence discovered at his residence in the initial entry and later search. Specifically, he argues that all of the evidence obtained should have been suppressed because the officers' initial entry into the house was in violation of his rights under the Fourth Amendment. The government, however, contends first, that exigent circumstances justified the initial warrantless entry, protective sweep and securing of the premises; and, second, that the subsequent search and seizure of items in the premises was valid because done pursuant to a search warrant based upon an independent source.

■■■ Warrantless entries into a residence are presumptively unreasonable. *United States v. Turner*, 650 F.2d 526, 528 (4th Cir.1981) (citing *Payton v. New York*, 445 U.S. 573, 586, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). However, an exception to the warrant requirement is made where certain exigent circumstances exist. Where police officers have probable cause to believe that evidence of illegal activity is present and reasonably believe that it may be destroyed or removed before they can secure a warrant, exigent circumstances exist to justify a warrantless entry. *Turner*, 650 F.2d at 528. Exigent circum-

stances, therefore, means that there is insufficient time to obtain a warrant.

■■■ In this case, the government's stated exigency was the possibility that Elizabeth Campbell might destroy evidence of illegal narcotics activity located at the Ewell Street residence, before the officers would be able to obtain a search warrant. The only evidence offered by the government on this point is the statement of Bibb when arrested that if he didn't return promptly, he didn't know what Mrs. Campbell would do with the contraband remaining on the premises. Despite this knowledge, the fact remains that the agents delayed for one hour without making any attempt to obtain a search warrant. Further, there was no showing that obtaining a warrant initially would have been difficult or time consuming. In fact, the record indicates that almost certainly there was probable cause, based on other information in the agents' possession, to obtain a search warrant for the residence prior to August 11, 1988, a finding we should not now make, however. *Murray*, 487 U.S. at 543, 108 S.Ct. at 2536. Finally, if there was any concern about destruction of additional evidence in the immediate aftermath of the arrest of Bibb, that was not demonstrated by the wait of an hour. These facts, and especially the delay of one hour, simply do not support the finding of exigent circumstances to justify the warrantless entry.* The government also contends, however, that even if the initial entering and securing of the Ewell Street residence was in violation of Campbell's Fourth Amendment rights, the subsequent search of these premises and the evidence obtained therein would be admissible because the later search pursuant to a warrant was based upon an independent source. See *Murray v. United States*, 487 U.S. 533, 108 S.Ct. 2529, 101 L.Ed.2d 472 (1987); *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984).

In *Murray*, the Court held that evidence seized pursuant to a subsequently issued

---

* The many events following 3:00 p.m. the afternoon of August 11th may make it seem that the wait of one hour is questionable. However, we must remember that the times mentioned are not exact and that the court (A. 110) and the defendant (Brief p. 2) agree that the wait was about an hour. That finding of the district court is not clearly erroneous.

warrant, although initially discovered during a search following an illegal entry, would be admissible provided that the later seizure, pursuant to a warrant, was genuinely independent of the earlier illegal activity. *Murray,* 487 U.S. 533, 542, 108 S.Ct. 2529, 2535, 101 L.Ed.2d 472. The Court commented that the later search and seizure would not have been independent if "... the agents' decision to seek the warrant was prompted by what they had seen during the initial entry, or if information obtained during that entry was presented to the Magistrate and affected his decision to issue the warrant." *Murray,* 487 U.S. at 542, 108 S.Ct. at 2535–36. The Court went on to indicate that the determination of the existence of these factors should be supported by adequate findings by the district court. *Murray,* 487 U.S. at 543, 108 S.Ct. at 2536.

■ We note that the affidavit in support of the search warrant makes no mention of evidence obtained in the illegal entry. However, the record is incomplete as to whether the agents' decision to secure the warrant was prompted by what was observed at the residence. The district court made no findings on these points, and did not specifically address the independent source issue because of its finding that exigent circumstances justified the initial entry. Accordingly, we remand for findings as to whether the subsequent search of Campbell's residence pursuant to the search warrant was, in fact, an independent source of the challenged evidence in the sense described above. If there was an independent source, the district court will again decline to suppress the evidence seized and will decline to set aside its conviction; if, on the other hand, there was no independent source, the district court will enter its order suppressing the evidence in question and vacate the conviction and award a new trial if the government be so advised.

REMANDED WITH INSTRUCTIONS.