682 A.2d 1185

**Artis BELLAMY**

v.

**STATE of Maryland.**

**No. 1990, Sept. Term, 1995.**

Court of Special Appeals of Maryland.

Sept. 26, 1996.

530

John L. Kopolow, Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Betty Stemley Sconion, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Patricia Jessamy, State's Attorney for Baltimore City, on the brief), Baltimore, for Appellee.

Submitted before WENNER and HOLLANDER, JJ., and JOHN J. BISHOP, Judge (retired), Specially Assigned.

HOLLANDER, Judge.

At a bench trial in the Circuit Court for Baltimore City, Artis Bellamy, the appellant, was convicted of possession of cocaine with intent to distribute, based on an agreed statement of facts. The court sentenced appellant to seven years imprisonment, and appellant filed this appeal. He argues that the trial court erred by denying his motion to suppress evidence seized during a search of his home, because the search was conducted in violation of the Fourth Amendment.

We find no merit in this argument and shall affirm the judgment of the trial court.

## Factual Summary

Officer William Cheuvront was the sole witness at the hearing on appellant's motion to suppress. The officer was a member of the Central District Drug Enforcement Unit of the Baltimore City Police Department. The parties stipulated that he was an expert in the areas of controlled dangerous substances and firearms.

Officer Cheuvront testified that, in early November of 1994, he met with a registered confidential informant known to the police as CD–271. On three separate occasions in the past, CD–271 had supplied information that had led to the seizure of narcotics and firearms. Based on the information supplied by CD–271 during the early November meeting, Officer Cheuvront ran a check on a particular apartment and learned that it was rented to appellant.

Shortly thereafter, Officer Cheuvront arranged for another registered confidential informant known as CD–130 to enter appellant's apartment and make a controlled buy of cocaine. CD–130 had previously made more than 25 controlled buys for the police, and those buys had led to the issuance of 25 search and seizure warrants. CD–130 entered appellant's apartment and made a controlled buy on November 6, 1994. The substance that was purchased proved to be 82% pure cocaine.

At 6:00 P.M. on December 4, 1994, CD–271 contacted Officer Cheuvront and informed him that a man named Woodrow Peterson was using appellant's apartment and had just stashed an AK–47 assault rifle and a large amount of cocaine there. Based on this information, Officer Cheuvront began to prepare an application for a search warrant. At 8:00 P.M., however, before the application was completed, CD–271 again contacted Officer Cheuvront and informed him that Peterson was preparing to move the assault rifle and the cocaine out of appellant's apartment. Officer Cheuvront gathered together other members of the Drug Enforcement Unit and proceeded

to appellant's apartment, intending to enter it without a warrant. The officer explained that the apartment building had three different entrances and four stairwells. He stated: "It's next to impossible to try to secure that situation without entering the apartment, based on my view and my sergeant's view." The officer added: "Once they exited that apartment with the AK–47 in their hand, it [would become] a very dangerous situation for the police and the other tenants in that building."

Once outside the apartment door, Officer Cheuvront shouted "Police," and the team of officers entered the apartment using a battering ram. Officer Cheuvront heard the sound of glass breaking, and a window was later found to be broken. The officers rounded up the several persons inside the apartment, including appellant. Another person was captured outside, after having jumped from a window. The officers handcuffed all of the persons who had been inside the apartment and seated them in "one centralized location." They observed, in plain view in the living room, a brown bag containing a large amount of suspected cocaine. Officer Cheuvront then returned to the station and completed the application for the search warrant. In the application, he relied on the cocaine in plain view in appellant's living room to help establish probable cause to support the warrant. The warrant was signed by a judge at 11:00 P.M., and Officer Cheuvront then notified the officers at the apartment to begin their search.

On this evidence, the trial court concluded:

We clearly have an exigent circumstance when at eight o'clock the informant advised the police officer that the gun and the narcotics were going to be moved to another location. The officer acted as expeditiously as he possibly could.

But it would have been foolhearted for him to enter into a premises where there was such a potentially lethal weapon without adequate manpower and physical protection, that being body armor.

So the officer acted as expeditiously as possible to get prepared to enter upon the premises. And with that we do have an exigent circumstance because, as the Court has implicitly entered a weighing of brevity of public concern issues. Here we have a very dangerous item.

It's not a midnight special or simple revolver. But we have an AK–47, which is extremely more lethal and potentially [more] dangerous than the other weapons that I had just made reference to.

So, I have no difficulty at all. When you have an impoundment situation, you've got to either have a consent given by the person who has actual standing and who has a[n] expectation of privacy on the premises or you have to have the exigent circumstance.

Here, consent is not an issue at all and has no bearing on this case. But exigent circumstance, as a matter of fact, it has to be established and I do find that the State has met its burden of establishing that there was an exigent circumstance by the informant's advisement that the weapon and the narcotics were going to be transported to another location.

### Discussion

In *McMillian v. State*, 325 Md. 272, 281–82, 600 A.2d 430 (1992), the Court of Appeals made clear that,

in assessing whether ... police conduct ... was reasonable under the Fourth Amendment, we make our own independent constitutional appraisal.... The factual predicate for this appraisal is that evidence adduced at the suppression hearing that is most favorable to the State as the prevailing party on the motion.... The trial court's findings as to disputed facts are accepted by this Court unless found to be clearly erroneous after having given due regard to the lower court's opportunity to assess the credibility of the witnesses....

(Citations omitted.) *See also Ornelas v. United States*, 517 U.S. ——, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (holding that

appellate court should conduct independent *de novo* review of ultimate question of probable cause to make warrantless search; findings of historical fact are reviewed only for clear error); *Jones v. State,* 111 Md.App. 456, 466–467, 681 A.2d 1190 (1996) (reviewing court "must make its own *de novo* determination of whether probable cause existed in light of the not clearly erroneous first-level findings of fact and assessments of credibility").

■ Appellant contends that the trial court erred in determining that the warrantless entry was justified by exigent circumstances. The agreed statement of facts revealed that an AK–47 assault rifle, two handguns, approximately 175 grams of crack cocaine, and nearly $2200.00 in cash, among other things, were seized during the search. Appellant posits that the evidence was the fruit of the warrantless entry into his apartment.

■ The Supreme Court has said:

Searches conducted without warrants have been held unlawful "notwithstanding facts unquestionably showing probable cause," ... for the Constitution requires "that the deliberate, impartial judgment of a judicial officer * * * be interposed between the citizen and the police * * * ." ... "Over and again this Court has emphasized that the mandate of the [Fourth] Amendment requires adherence to judicial processes," ... and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.

*Katz v. United States,* 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967) (citations omitted). Those exceptions include: a consent to search; an emergency that requires immediate response; hot pursuit of a fleeing felon; and imminent destruction or removal of evidence. *See Vale v. Louisiana,* 399 U.S. 30, 35, 90 S.Ct. 1969, 1972–73, 26 L.Ed.2d 409 (1970). Although the instant case involves the warrantless

entry into—and impoundment of—appellant's apartment, the analysis is the same. The United States Court of Appeals for the Fourth Circuit has explained:

Warrantless entries into a residence are presumptively unreasonable.... However, an exception to the warrant requirement is made where certain exigent circumstances exist. Where police officers have probable cause to believe that evidence of illegal activity is present and reasonably believe that it may be destroyed or removed before they can secure a warrant, exigent circumstances exist to justify a warrantless entry.... Exigent circumstances, therefore, means that there is insufficient time to obtain a warrant.

*United States v. Campbell,* 945 F.2d 713 (4th Cir.1991) (citations omitted).

■ "The meaning of exigent circumstances is that the police are confronted with an emergency—circumstances so imminent that they present an urgent and compelling need for police action." *Stackhouse v. State,* 298 Md. 203, 219–20, 468 A.2d 333 (1983). "The burden to establish that exigent circumstances justified [a] warrantless entry ... rests with the State.... To determine whether exigent circumstances were present, we must limit our review to what the police reasonably believed at the time of their warrantless entry." *McMillian,* 325 Md. at 282, 600 A.2d 430 (citations omitted). As the Court recognized in *Carroll v. State,* 335 Md. 723, 737, 646 A.2d 376 (1994), "The determination of whether exigent circumstances exist must be made on a case by case basis and is determined by the individual facts of each case."

Neither this Court nor the Court of Appeals has yet addressed when the risk of the destruction or removal of evidence justifies a warrantless entry into a home. *See generally Stackhouse,* 298 Md. at 219–20, 468 A.2d 333 (exigent circumstances did not justify the warrantless search of the defendant's home after his arrest even though his sister remained in the home, since police had no reason to believe that there was evidence in the home or that the sister would destroy it); *McMillian,* 325 Md. at 283–84, 600 A.2d 430 (because police

delayed one hour between witnessing suspected drug transactions at a private club and entering the club to secure it until a search warrant could be obtained, exigent circumstances no longer existed); *Spiering v. State*, 58 Md.App. 1, 12, 472 A.2d 83 (1984) (a search of a home by police was not justified by exigent circumstances since the occupants of the home did not know the home was under surveillance and therefore had no reason to destroy drugs believed to be contained therein).

When faced with circumstances suggesting a real threat that evidence inside a home might be destroyed or removed by persons therein, however, courts from other jurisdictions have consistently held that exigent circumstances justified entering the premises and keeping those persons within under watch, pending the issuance of a search warrant. *See United States v. Riley*, 968 F.2d 422 (5th Cir.) (risk of destruction of drugs, complicated by fact that suspects believed to be armed), *cert. denied*, 506 U.S. 990, 113 S.Ct. 507, 121 L.Ed.2d 442 (1992); *United States v. Lai*, 944 F.2d 1434 (9th Cir.1991) (risk of destruction of drugs), *cert. denied sub nom. Brandon v. United States*, 502 U.S. 1062, 112 S.Ct. 947, 117 L.Ed.2d 116 (1992); *United States v. Morales*, 868 F.2d 1562 (11th Cir. 1989) (risk of destruction of drugs); *United States v. Cuaron*, 700 F.2d 582 (10th Cir.1983) (risk of destruction of drugs); *United States v. Korman*, 614 F.2d 541 (6th Cir.) (risk of destruction of drugs), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 808 (1980); *United States v. Rubin*, 474 F.2d 262 (3rd Cir.) (risk of destruction of drugs), *cert. denied sub nom. Agran v. United States*, 414 U.S. 833, 94 S.Ct. 173, 38 L.Ed.2d 68 (1973); *South Dakota v. Johnson*, 509 N.W.2d 681 (S.D.1993) (risk of destruction of drugs), *sustained upon rehearing*, 517 N.W.2d 131 (S.D.1994); *Michigan v. Blasius*, 435 Mich. 573, 459 N.W.2d 906 (1990) (risk of destruction or removal of drugs); *Rhode Island v. DeLaurier*, 533 A.2d 1167 (R.I.1987) (risk of destruction of drugs); *Iowa v. Davis*, 383 N.W.2d 524 (Iowa 1986) (risk of destruction of drugs); *Patterson v. Wyoming*, 691 P.2d 253 (Wyo.1984) (risk of destruction of drugs), *cert. denied sub nom. Spoon v. Wyoming*, 471 U.S. 1020, 105 S.Ct. 2048, 85 L.Ed.2d 311 (1985); *North Dakota v.*

*Nagel,* 308 N.W.2d 539 (N.D.1981) (risk of destruction of drugs); *Keeter v. Virginia,* 222 Va. 134, 278 S.E.2d 841 (1981) (risk of destruction of drugs); *McNairy v. Texas,* 835 S.W.2d 101 (Tex.Crim.App.1991) (risk of destruction of drugs); *Leisure v. Florida,* 437 So.2d 751 (Fla.App.1983) (risk of destruction of evidence of burglary), *cert. denied,* 449 So.2d 264 (1984); *North Carolina v. Tripp,* 52 N.C.App. 244, 278 S.E.2d 592 (1981) (risk of destruction or removal of evidence of burglary). *Compare United States v. Gooch,* 6 F.3d 673 (9th Cir.1993) (although a suspect had fired a gun in a campground before retreating with the gun into his tent, no exigent circumstances justified a search of the tent by police officers who had arrived at the campground several hours after the shooting took place and had already removed all of the occupants from the tent); *Campbell,* 945 F.2d 713 (entry by police into the defendant's home to ensure that narcotics were not destroyed by the defendant's wife was not supported by exigent circumstances, when the prosecution established only that a suspected middleman, who was arrested after leaving the defendant's home with cocaine to sell to a third person, told police that he did not know what the defendant's wife would do with the remaining cocaine if the suspected middleman did not return soon with proceeds from the sale); *Haynes v. Arkansas,* 269 Ark. 506, 602 S.W.2d 599 *cert. denied,* 449 U.S. 1066, 101 S.Ct. 795, 66 L.Ed.2d 611 (1980) (Ark.) (no risk of destruction of drugs in a hotel room when the defendant/occupant was not aware that police were conducting surveillance); *Hawaii v. Dorson,* 62 Haw. 377, 615 P.2d 740 (1980) (no risk of destruction of drugs in a home when a suspected accomplice in the home was not aware of the defendant's arrest).

Moreover, in holding that a search conducted pursuant to a warrant was not tainted by a warrantless entry even if the entry was unlawful, the Supreme Court has commented: "[W]here officers, having probable cause, enter premises, and with probable cause, arrest the occupants who have legitimate possessory interests in its contents and take them into custody and, for no more than the [19 hour] period here involved,

secure the premises from within to preserve the status quo while others, in good faith, are in the process of obtaining a warrant, they do not violate the Fourth Amendment's proscription against unreasonable seizures." *Segura v. United States,* 468 U.S. 796, 798, 104 S.Ct. 3380, 3382, 82 L.Ed.2d 599 (1984). *See generally* Wayne R. LaFave, *Search and Seizure* § 6.5(c) (3d ed.1996).

As we have observed, at 6:00 P.M. on December 4, 1994, CD–271 informed Officer Cheuvront that Woodrow Peterson had just stashed an AK–47 and a large amount of cocaine in appellant's apartment. Two hours later, as Officer Cheuvront was preparing an application for a search warrant, CD–271 notified him that Peterson was preparing to move the drugs and the weapon out of the apartment. Officer Cheuvront knew that the assault weapon was extremely powerful and dangerous. Its rounds could penetrate the officers' protective vests. Significantly, appellant did not challenge below the reliability of the information supplied by CD–271 and does not challenge it in this appeal. Thus, there is no dispute that Officer Cheuvront was given reliable information that the drugs and weapon were present in the apartment but were about to be removed.

In response to the latest information supplied by CD–271, the officer immediately gathered other members of the Drug Enforcement Unit, intending to impound the apartment until the application for a search warrant could be completed and a warrant could be obtained. Shortly after 9:00 P.M., CD–271 again contacted Officer Cheuvront and informed him that Peterson was still in the apartment. Officer Cheuvront and other officers proceeded to the address. According to Officer Cheuvront, the purpose "was to control the situation, to not let the AK–47 get out of [t]he apartment or to have it in somebody's hand where it would turn into a confrontation."

When the police entered the apartment at 9:15 P.M., they secured it by handcuffing the occupants and placing them in a "centralized location." The search warrant was signed by a judge at 11:00 PM and was executed promptly. On these

facts, the trial court concluded that exigent circumstances existed, and that the police acted reasonably in entering the apartment and securing it until the search warrant was obtained. Our own independent constitutional appraisal of the record satisfies us that the trial court correctly applied the law to the facts.

We are not persuaded by appellant's suggestion that the police could have recovered the evidence more efficiently—and without entering the apartment—had they simply surrounded the apartment building and confronted Peterson as he left. The parties stipulated that Officer Cheuvront was an expert as to firearms. Officer Cheuvront testified that, because of the layout of the apartment building and because Peterson was known to have an AK–47, it was "next to impossible to try to secure the situation without entering the apartment." He added that the presence of the AK–47 could create "a very dangerous situation" on the street. The trial court, which had the opportunity to judge the credibility of the witness, found the officer's concern to be reasonable, and we perceive no error. *Cf. United States v. Reed,* 935 F.2d 641 (4th Cir.) (*per curiam*), *cert. denied,* 502 U.S. 960, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991) (exigent circumstances justifying a warrantless entry existed when police, who went to the defendant's home to question him about the alleged abuse of his children, saw, through an open door, a man sleeping on the sofa with a sawed-off shotgun at his feet).

To be sure, we do not suggest that the mere presence in a home of a dangerous weapon, such as an AK–47 assault rifle, or drugs, always constitutes an exigent circumstance to justify a warrantless entry into the home by police. Rather, we hold that under the circumstances of this particular case, in which the police had reliable information that the assault weapon and the cocaine were present and were about to be removed, and the police reasonably concluded that less intrusive measures to obtain the evidence and safeguard the weapon would be ineffective or, worse, could endanger the public, the warrantless entry was justified by exigency.

JUDGMENT AFFIRMED; APPELLANT TO PAY THE COSTS.