**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 17-4697

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JACQUES KEVIN AGENT, a/k/a Twin,

Defendant - Appellant.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Catherine C. Blake, District Judge.  (1:15-cr-00399-CCB-2)

Argued:  January 31, 2019                                    Decided:  March 20, 2019

Before MOTZ, DUNCAN, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished opinion.  Judge Quattlebaum wrote the opinion, in which Judge Motz and Judge Duncan joined.

**ARGUED:**  Gary Proctor, LAW OFFICES OF GARY E. PROCTOR, LLC, Baltimore, Maryland, for Appellant.  Derek Edward Hines, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.  **ON BRIEF:**  Robert K. Hur, United States Attorney, Daniel C. Gardner, Assistant United States Attorney, Christine O. Goo, Special Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

QUATTLEBAUM, Circuit Judge:

A jury convicted Jacques Agent of possessing a firearm in violation of 18 U.S.C. § 922(g). The district court sentenced him to 72 months in prison. Agent now appeals the judgment and sentence entered in the United States District Court for the District of Maryland on November 9, 2017. Agent argues that the district court erred by denying his motion to suppress and finding that law enforcement did not violate his Fourth Amendment rights when officers entered and subsequently searched his home. For the reasons set forth below, we affirm the district court.

I.

A.

In March 2015, law enforcement officers with the Baltimore Police Department ("BPD") and the Federal Bureau of Investigation ("FBI") were investigating three armed robberies that occurred in Baltimore, Maryland. (J.A. 169.) The officers obtained video surveillance from two of the three robberies which depicted an individual robbing wireless phone stores with a revolver. (J.A. 168-170.) On March 26, 2015, the BPD officers arrested and charged Howard Downey with all three robberies. (J.A. 170.) While Downey was in jail, he asked his sister, Stacy Downey, to get rid of the firearm used in the robberies, and she obliged. (J.A. 173-177.) When the BPD interviewed Stacy Downey on March 30, 2015, she denied any knowledge of the firearm. (J.A. 177.) BPD detectives interviewed Stacy Downey again on April 8, 2015, and, at that time, she admitted that she retrieved the firearm used in the robberies and took it to Agent's house for him to hold the weapon. (J.A. 158.) Stacy Downey told law

2

enforcement that the weapon would be in the ceiling of the second-floor rear bedroom of Agent's house. (J.A. 112, 55, 158.)

Based on the information provided by Stacy Downey, BPD law enforcement officers attempted to locate Agent to find the firearm and other evidence related to the robberies. They reviewed department records and identified an address for Agent. (J.A. 27, 158.) Officers then responded to that residence to confirm that Agent resided at that location. On April 8, 2015 at approximately 6:55 p.m., BPD Detective Brian Patterson and FBI Special Agent Robert Dane knocked on the front door of the house. (J.A. 27-28.) Agent answered the door and confirmed that he resided at that location. (J.A. 113.) The officers then told Agent that they needed to talk. The officers entered the residence and did a protective sweep and secured the residence. The officers informed Agent that they were going to apply for a search warrant. The officers continued to secure the residence for approximately two and a half hours before BPD Detective Christian Schaeffer arrived with the search warrant. (J.A. 113, 115.)

During the protective sweep of the home, the officers did not seize any items or obtain any information or evidence relevant to the investigation. (J.A. 116.) Upon receipt and execution of the search warrant, officers found guns and ammunition in the ceiling, as well as other personal items associated with Agent. (J.A. at 31-32.) The BPD officers then placed Agent under arrest.

Agent asked the district court to suppress the evidence seized and the statements made when law enforcement first entered his home without a warrant. (J.A. 97.) After briefing and a thorough pretrial motions hearing, the district court ruled from the bench

3

denying Agent's motion to suppress. (J.A. 157.) Initially, and without specifically considering the question of the seizure and entry into the home, the district court concluded that the affidavit presented in support of the search warrant was valid and supported by probable cause within its four corners. (J.A. 158-159.) The district court particularly noted Stacy Downey's statement to law enforcement that she picked up the gun for her brother, took it to Agent's house and that Agent agreed to hold it for her in the ceiling of his second-floor rear bedroom. (J.A. 158.) In finding probable cause, the district court stated that: (1) Stacy Downey also identified Agent via a photograph, (2) law enforcement confirmed that he lived at the address and (3) Agent was prohibited from being in possession of a firearm. (J.A. 158.) The district court further concluded that exigent circumstances existed and justified law enforcement's actions to prevent the imminent destruction of evidence. (J.A. 159-160.) In denying the motion, the district court also noted that the warrant in this case was not issued based on any evidence law enforcement found during the protective sweep. (J.A. 163.)

Agent proceeded to trial where the government later offered evidence that Agent was in constructive possession of a firearm that had been used in several robberies. The jury found Agent guilty of one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). On appeal, Agent argues that the police had no justification to enter his residence and seize him without a warrant. Accordingly, he submits that the evidence resulting from the police search should have been suppressed.

B.

This Court reviews the district court's factual findings regarding the motion to

4

suppress for clear error, and the court's legal conclusions de novo. *United States v. McBride*, 676 F.3d 385, 391 (4th Cir. 2012). "When, as here, a motion to suppress has been denied, we view the evidence in the light most favorable to the government." *Id.*

II.

We start with the recognition that the Fourth Amendment protects citizens against unreasonable searches and seizures. *United States v. Brown*, 701 F.3d 120, 126 (4th Cir. 2012). Although warrantless entries, searches and seizures are presumptively unreasonable, there are a few well-established exceptions to the search warrant requirement. *Id.* One such is an exception for "exigent circumstances," meaning that the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment. *Kentucky v. King*, 563 U.S. 452, 460 (2011). If no exception to the warrant requirement applies to the facts of the case, "suppression of evidence obtained during illegal police conduct provides the usual remedy for Fourth Amendment violations," and courts will also "suppress evidence that is the indirect product of the illegal police activity" as fruit of the poisonous tree. *United States v. Oscar-Torres*, 507 F.3d 224, 227 (4th Cir. 2007); *see also Wong Sun v. United States,* 371 U.S. 471, 488 (1963).

But "[o]ur cases establish that such suppression is not an automatic consequence of a Fourth Amendment violation." *Herring v. United States*, 555 U.S. 135, 137 (2009). Suppression is a "'judicially created remedy'" designed to safeguard Fourth Amendment rights through deterrence. *United States v. McLamb*, 880 F.3d 685, 690 (4th Cir. 2018)

(quoting *United States v. Leon*, 468 U.S. 897, 906 (1984)). Suppression, however, is not a personal constitutional right of the aggrieved party. *Id.*

With this backdrop in mind, we turn to the district court's denial of the motion to suppress evidence obtained during the April 8, 2015 search of Agent's residence. On appeal, Agent argues that no exigent circumstances existed in this case to permit the officers' warrantless entry into his residence. The district court concluded that: (1) exigency arose once Agent knew that police were there, (2) law enforcement reasonably seized and secured the premises while the warrant was being obtained, and (3) exclusion of the evidence was not necessary because the warrant was not issued based on evidence found during the protective sweep. (J.A. 162-163.)

In our review, we may "affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." *Scott v. United States,* 328 F.3d 132, 137 (4th Cir. 2003). We need not remand, if "any reasonable view of the evidence, looked at in the light most favorable to the government, will sustain the denial." *Brown*, 701 F.3d at 125 (internal quotation marks omitted)).

Here, we decline to address whether the police officers' initial entry into the residence and seizure of Agent was proper because we find that the evidence is admissible under the independent source doctrine. The independent source doctrine allows for the admissibility of evidence if it would have been obtained independently of an illegal search. *See United States v. Bullard,* 645 F.3d 237, 244 (4th Cir. 2011). Pursuant to this doctrine, a finding of an unlawful warrantless entry or search does not automatically render excludable the items seized during a subsequent search done

6

pursuant to a valid search warrant. *See Murray v. United States,* 487 U.S. 533, 542 (1988) ("So long as a later, lawful seizure is genuinely independent of an earlier, tainted one . . . there is no reason why the independent source doctrine should not apply."). Suppression of the evidence obtained is appropriate only if the subsequently issued warrant was tainted by the illegal entry. *United States v. Campbell*, 945 F.2d 713, 714 (4th Cir. 1991). In other words, evidence seized pursuant to a subsequently issued warrant is admissible so long as the search done pursuant to the warrant was genuinely an independent source of the information and evidence at issue. *United States v. Walton,* 56 F.3d 551, 554 (4th Cir. 1995).

*Murray* sets forth two criteria for satisfying the independent source rule: (1) that officers did not include any recitation of their earlier unlawful observations in their application for a warrant; and (2) that the alleged illegal entry did not affect the officers' decision to obtain a warrant. *Murray*, 487 U.S. at 543. Both elements are satisfied here. First, the district court expressly found that the law enforcement officers did not rely on anything they found in the house for obtaining the search warrant. (J.A. 163.) At the time the officers entered and secured the home, another detective was in the process of making the affidavit and swearing out the warrant application. (J.A. 34, 74.) The officers on the scene conducted a protective sweep of the residence, but did not search or seize any items from the residence and instead waited until the warrant arrived. The district court concluded that there was probable cause within the four corners of the affidavit for the warrant to have been issued based on law enforcement's conversations with Stacy

Downey and an assessment of department records. (J.A. 158.) Such facts, which were obtained independent of the initial entry and search, support a finding of probable cause.

Second, the officers' decision to obtain the warrant was not based on information discovered during the alleged illegal entry. The district court credited law enforcement's testimony that they wanted to confirm they were at the right residence before obtaining a warrant. (J.A. 163, 29.) As noted above, at the same time the officers entered the house, another detective was already in the process of obtaining the warrant. When law enforcement officers approached Agent's house, they had strong reason to suspect he had a gun in the house based on the testimony of Stacy Downey. This is in fact what the district judge set forth in her analysis.

On these facts, the record reflects that the BPD law enforcement did not obtain any evidence during an alleged illegal warrantless entry into the home nor did such an act affect the decision to seek the search warrant or issue the warrant. Thus, based on the independent source doctrine, we affirm the district court's denial of Agent's motion to suppress.

### III.

Because law enforcement obtained the evidence challenged here pursuant to a valid search warrant issued independent of the entry and seizure of Agent's residence, we affirm the district court's denial of Agent's motion to suppress. Accordingly, the judgment of the district court is

*AFFIRMED.*

8